**RAINSONG COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 93–71035.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 16, 1995.

Decided March 19, 1996.

Christopher D. Williams, San Andreas, California; William Devine, pro se, Maple Falls, Washington, for the petitioner.

Timm L. Abendroth, Federal Energy Regulatory Commission, Washington, D.C., for the respondent.

Before: GOODWIN, SNEED, and KLEINFELD, Circuit Judges.

GOODWIN, Circuit Judge:

Rainsong Company, following denial of its petition for rehearing by the Federal Energy Regulatory Commission (the Commission), seeks review of an order rejecting Rainsong's application for a hydropower license on a stream within the Olympic National Forest.

## I.

### FACTS AND ADMINISTRATIVE HISTORY

Rainsong's efforts to build a hydroelectric power plant (the project) began in 1981. Rainsong applied for a license from the Commission pursuant to the Federal Power Act (FPA), 16 U.S.C. §§ 791a *et seq.* The license application proposed building the project on Lena Creek.

The first application was denied by order of the Director of the Commission's Office of Hydropower Licensing on June 29, 1987. The denial was based on the conclusion of the Secretary of Agriculture, relying on the Forest Service's staff reports, that the project would interfere and be inconsistent with the purpose of the Olympic National Forest.

Rainsong appealed that order, and the Commission granted its appeal on January 25, 1990.[1] The order reinstated Rainsong's application and gave Rainsong six months to try to resolve the Forest Service's objections and to amend the license application if needed.[2] Rainsong filed an amended application on July 23, 1991. The application proposed

---

1. *Rainsong Co.,* 50 Fed.Energy Reg.Comm'n Rep. (CCH) par. 61,079, 61,217 (Jan. 25, 1990).

2. *Id.* at 61,219.

construction of a five-megawatt hydroelectric plant. The project would consist of a ten-foot-high, 120–foot–wide concrete dam to divert water from Lena Creek through an intake structure, which would include a 2,300–foot–long steel pipeline and a 1,500–foot–long "penstock." The water would flow through a penstock into a large, concrete power house, and then out through a 150–foot–long tailrace into the Hamma Hamma River. The project would also require a six-mile underground transmission line, a fifty-foot connecting road from the powerhouse to an existing Forest Service road, and other facilities.

The staffs of the Forest Service and the Commission jointly prepared an Environmental Assessment (EA) of the project. The EA concluded that the project would be inconsistent with the Forest Service's 1990 Land Resource Management Plan for the Olympic National Forest (Forest Plan), which designates the Lena Creek area for recreation in a natural, undeveloped setting.[3]

The EA delivered its opinion that the project would detract from the natural appearance of the area, parts of which could be seen from a popular hiking trail. The EA did not add, however, that a substantial number of clear cuts could also be viewed from the same trail. The EA asserted that the project would create an attractive nuisance, warning signs and fences would be needed to prevent vandalism and possible injury to persons who might not heed warnings signs, all of which would impact the pre-construction scenic beauty. The EA also asserted that the diversion of water at the intake facility would reduce the pleasant sights and sounds of Lena Creek's rushing water. Moreover, the EA concluded that the project would be inconsistent with the Forest Service's Spotted Owl Plan, which restricts development in areas of owl habitat, including Lena Creek. Based on the foregoing conclusions, the Commission issued an order denying Rainsong's license application. *Id.*

Rainsong again filed a request for rehearing, arguing that the EA's factual conclusions were erroneous and that the Commission had failed to balance developmental considerations with the non-developmental ones. On October 22, 1993, the Commission denied the request for rehearing.[4] Rainsong timely petitioned for review. This court has jurisdiction pursuant to the FPA, § 313(b), 16 U.S.C. § 825*l*(b).

## II.

### STANDARD OF REVIEW

▮▮▮ Our review of agency licensing decisions is limited to asking whether the agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, or if it was taken without observance of procedure required by law. *Loomis Cabinet Co. v. OSHRC,* 20 F.3d 938, 941 (9th Cir.1994). An agency's interpretation of a statutory provision or regulation it is charged with administering is entitled to a high degree of deference. *Todd Shipyards Corp. v. Director, Office of Workers Compensation Programs,* 950 F.2d 607, 610 (9th Cir. 1991). Courts must, however, reject administrative orders that are contrary to congressional intent. *Id.* Here we have a competition between two environmental values. Water power using abundant rainfall and favorable topography reduces negative environmental consequences of burning fossil fuel. However, water power engineering in a pristine forest has its own environmental consequences.

## III.

### DISCUSSION

Rainsong raises two arguments against the Commission's order. First, Rainsong claims

---

**3.** The previous Forest Plan, promulgated in 1978, also provided that the Lena Creek area be managed to preserve its recreational nature. *See Rainsong Co.,* 63 Fed.Energy Reg.Comm'n Rep. (CCH) par. 61,157 at 61,994 (May 5, 1993). However, under the 1978 plan, the Lena Lake area was to be managed to protect the area's "recreational values" and the goals were to be the "maintenance and enhancements of the recreation area." *Rainsong Co.,* 50 FERC at 61,-079. The plan also contemplated "concentrated recreation use." *Id.* at 61,079 n. 6. In the 1990 plan, the Forest Service changed its plan to "an experience mostly free from the sights and sounds of other people," 63 FERC 61157 "in a Primitive or Semi–Primitive setting." *Id.* at n. 11.

**4.** *Rainsong Co.,* 65 Fed.Energy Reg.Comm'n Rep. (CCH) 61,104 (Oct. 22, 1993).

that the Commission did not balance developmental and non-developmental factors in its determination. Second, Rainsong contends that the Commission effectively abdicated its authority in favor of relying unduly on the Forest Plan which it understood as strongly protective of the forest's esthetics. We note at the outset that these two arguments are interrelated. Each argument challenges the Commission's interpretation of § 4(e) of the FPA.[5]

## A.

### FPA SECTION 4(e)—ITS PLAIN MEANING

The Federal Energy Regulatory Commission shall be guided by § 4(e) of the FPA when considering project applications. Two provisions of § 4(e) are central to our analysis. The first states:

"[The Commission is authorized] to issue licenses ... for the purpose of constructing, operating, and maintaining ... project works necessary or convenient for the ... development, transmission, and utilization of power ... *Provided,* That licenses shall be issued within any reservation only after a finding by the Commission that the license will not interfere or be inconsistent with the purpose for which such reservation was created or acquired ..."[6]

Section 4(e) was amended in 1986 in the Electric Consumers Protection Act (ECPA), Pub.L. 99–495, § 3(a). The amended provision states:

In deciding whether to issue any license under this Part for any project, the Commission, in addition to the power and development purposes for which licenses are issued, shall give equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife (including related spawning grounds and habitat), the protection of recreational opportunities, and the preservation of other aspects of environmental quality.[7]

The parties' respective interpretations of § 4(e) may be summarized as follows. The Commission contends that the 1986 amendment need be considered only if it first finds the project "consistent" with the purposes of the forest reservation.[8] Rainsong, on the other hand, contends that both provisions of the statute must be addressed and that the Commission's refusal to consider the latter provision amounts to a failure to comply with the mandate that the Commission shall equitably weigh the benefits of hydroelectric power with environmental impact.

■ An agency's interpretation of a legislative delegation is entitled to deference where Congress' intent on the issue is not explicit. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* However, courts have the duty to make sure that the agency followed the relevant statute. *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983) ("reviewing courts ... must not rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute").

■ If competing statutory intentions point generally in a common direction, it is the task of the agency to pursue a middle course that vitiates neither stated intent but implements to the fullest extent possible the directives of each, and it is the task of the reviewing court to ensure that the agency has effectively and appropriately harmonized

---

5. Section 4(e) is codified as 16 U.S.C. § 797(e).

6. Section 4(e). This provision will be referred to, herein, as the "first provision" or "former provision."

7. This provision will be referred to, herein, as the "second provision" or "latter provision."

8. *See Rainsong, Co.,* 65 Fed.Energy Reg.Comm'n Rep. at 61,576 ("Since we find that the project is inconsistent with the Forest Plan, we do not reach any balancing of developmental and non-developmental values.").

the provisions while remaining within the bounds of that agency's statutory authority. *Citizens to Save Spencer County v. EPA,* 600 F.2d 844, 871 (D.C.Cir.1979). In order for this Court to affirm the Commission's interpretation of § 4(e), we must either hold that the agency gave effect to the intent of Congress or, in the alternative, that the statute is inherently ambiguous, making the Commission's interpretation reasonable and worthy of deference.

■ We look first to the plain meaning of § 4(e). We do not find it to be ambiguous and, thus, we will defer to the Commission's interpretation of § 4(e) only if it is compatible with Congress' clear intent as expressed by the plain meaning of the statute.

The Commission contends that § 4(e), with respect to the two cited provisions, establishes a procedure whereby the Commission will apply the second provision only if it is satisfied that the proposed development plan meets the conditions set forth in the first provision. The Commission points to the language of the statute, which states as a proviso that "licenses shall be issued within any reservation *only after* a finding" of consistency and noninterference with the purposes of the reservation. § 4(e), 16 U.S.C. § 797(e) (emphasis added).

The Commission's interpretation of § 4(e), and the force of "only after," led it to conclude that it could decide the abstract question of consistency without looking at the 1986 amendment. This read out of the statute the express duty to give "equal consideration" to developmental and non-developmental values in its analysis because of the *preliminary assumption* that the project would be inconsistent and interfere with the purpose of the Olympic National Forest.

Section 4(e) does not have two meanings. It requires the Commission to analyze whether the project is consistent with the purpose of the reservation. But the Commission, in evaluating the consistency question, must balance the developmental and nondevelopmental factors. To bifurcate the analysis by over emphasis on the "only after" clause in the first part of the section without considering the 1986 amendment is to make the amendment meaningless.

If the Commission decides that any power plant, no matter how carefully blended into the terrain, and no matter how carefully environmental and power values were balanced, would be inconsistent with environmental values, it could therefore decline to perform any balancing of values in reaching its decision to deny the license. In other words, having made its decision without weighing competing values, the Commission decided that it need not weigh them, thus effectively ignoring the 1986 amendment to § 4(e).

As amended, § 4(e) reads as an integrated statute. A plain reading of the two applicable sentences together shows that the "only after" language applies to the whole section. The proviso language within the first sentence simply conditions the Commission's grant upon a preliminary determination that such grant will not offend the purpose for which the forest was created. Reading § 4(e) as an integrated direction to the Commission is consistent with other sections of Title 16 which call for interagency consultations and preparation of conditions as needed to protect, for example, fish spawning grounds and habitat. *See,* e.g., 16 U.S.C. § 803(j).

Two aspects of the amendment support the idea that the balancing of values is an integral part of the Commission's decision-making process to be considered in conjunction with the Commission's consideration of whether a project may be undertaken in light of the purpose of the reservation. First, the second, amended provision is prefaced by the language, "[i]n deciding whether to issue any license ... for any project ...." § 4(e), 16 U.S.C. § 797(e). What follows this language is, in fact, what the Commission is to consider in its decision-making process, not as an afterthought. Second, the part of the second provision following the comma after the word "project," calls for a balancing test which, in light of the first phrase, becomes the focus of the Commission's decision-making process. Here, Congress has provided that such balancing test *"shall* give *equal consideration"* to developmental and nondevelopmental fac-

tors. *Id.* (emphasis added).[9] Thus, the language of the amendment independent of, and in conjunction with, the proviso language of the earlier provision, does not consider the "balancing" as an afterthought as proffered by the Commission.

The Commission did not comply with the statutory mandate to balance developmental and nondevelopmental factors when it denied Rainsong's application. The Commission erred when it declared in its order denying Rainsong a license that it need not reach a balancing test.

The EA and the Commission's overemphasis thereon indicate that the Commission did not balance developmental and nondevelopmental values, giving "equal consideration" to each. Of the thirty-three pages making up the EA, less than one is dedicated to a discussion of the "Need for Power" or the renewable energy benefits to be conferred by the proposed Lena Creek Hydroelectric Project. The EA does not use language indicative that balancing was performed. While silence does not prove violation of the § 4(e) mandate, we do not find substantial evidence in the record to support the conclusion that the Commission did, in fact, balance the competing values. The Commission's contention that it need not balance these values is evidence that the Commission did not comply with § 4(e).

## B.

### ABDICATION OF AUTHORITY

Rainsong argues that the deference afforded by the Commission to the Forest Service, with respect to the latter's definition of the

purpose of the forest, amounted to an abdication of power by the Commission. We need not reach the question whether the Commission abdicated its authority. Its consideration of only the 1990 Forest Plan and the EA in determining the purposes of the Olympic National Forest may have been superficial, if not arbitrary. But on remand, we must assume that the Commission will follow the statute.

■ Under the FPA, the Commission has the "exclusive authority to issue all licenses." *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 775, 104 S.Ct. 2105, 2111, 80 L.Ed.2d 753 (1984); *See also* 16 U.S.C. § 797(e). Section 4(e) provides that "licenses shall be issued within any reservation[10] only after a finding by the Commission that the license will not interfere or be inconsistent with the purpose for which such reservation was created or acquired."

The statute does not indicate how the Commission is to determine "the purpose for which [a] reservation was created or acquired." In this circumstance, where the FPA is silent on an issue, the court must uphold the Commission's resolution of the issue if it is based on a "permissible" construction of the statute. *City of Seattle v. FERC,* 923 F.2d 713, 715 (9th Cir.1991) (the court of appeals generally shows "great deference" to the Commission's interpretation of the law it is charged with administering). We agree that the Commission's reliance on the Forest Service's definition of the purpose of the reservation is entitled to "great deference."

Rainsong argues that this case is controlled by *United States v. New Mexico,* 438

---

**9.** How to weight the various environmental and development factors is within the discretion of the agency. Senator Johnston, an author of the 1986 amendment, explained that equal consideration does not mean equal treatment, and that the Commission should use its "public interest judgment" to balance developmental and nondevelopmental factors. *California v. F.E.R.C.,* 966 F.2d 1541, 1550 (9th Cir.1992). The Ninth Circuit has interpreted the issue of "weighting" under the current FPA consistently with Senator Johnston's remarks. " 'Equal consideration' is not the same as 'equal treatment'.... FERC must balance the public interest in all of its stated dimensions, give equal consideration to conflicting interests, and reach a reasoned factu-

al decision." *Id.* Thus, the 9th Circuit implicitly held that any rigid, numerical weighting of competing considerations *ex ante* would frustrate the Commission's duty to "balance the public interest in all of its stated dimensions ... and reach a reasoned factual decision." *Id. See also Udall v. F.P.C.,* 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (1966) (expressly leaving it to the Commission to appraise the factors involved in the "public interest").

**10.** The Olympic National Forest is a "reservation" for purpose of the FPA. 16 U.S.C. § 796(2).

U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978). However, that case is distinguishable. *New Mexico* was a water rights case involving the reserved rights doctrine. The Court held that the 1960 Multiple–Use Sustained–Yield Act's expansion of the purposes of the national forests did not effect an expansion of the United States' implied reservation of water in the national forests. *Id.* at 713, 98 S.Ct. at 3020–21.

> The Court indicated that water may be reserved ... only for the primary purpose of a federal reservation. Hence, *even though the Supreme Court agreed that hunting, fishing and recreation are among the purposes for which the National Forest System is maintained,* it determined that these purposes are secondary to the purposes of "securing favorable conditions of water flows," and furnishing a "continuous supply of timber." Accordingly, only the latter purposes carried with them an implied reservation of water rights. *United States v. Adair,* 723 F.2d 1394, 1408–09 (9th Cir.1983) (citations omitted) (emphasis added), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

The Commission has, quite reasonably, declined to interpret the narrow holding of *New Mexico* to mean that it should disregard Congressional amendments to the purposes of the national forests in making consistency determinations under § 4(e) of the FPA. *Southern California Edison Co.,* 70 Fed.Energy Reg.Comm'n Rep. (CCH) par. 61,130, at 61,353 (Feb. 1, 1995). Rather, the Commission maintains that it is "bound to look to *all* Congressional enactments" regarding the purposes of the national forests. *Id.* at 61,-352 (emphasis added); *accord Pacific Gas & Elec. Co.,* 70 Fed.Energy Reg.Comm'n Rep. (CCH) par. 61,185, 61,613 (Feb. 15, 1995); *Pacific Gas & Elec. Co.,* 69 Fed.Energy Reg. Comm'n Rep. (CCH) par. 61,070, 61,308 (Oct. 18, 1994).

The Commission views the Forest Service's management of the Olympic National Forest as reflective of Congressional intent regarding the purposes of the forests. The Commission therefore contends that it is entitled to rely on the Forest Plan:

> Congress has directed the Forest Service to develop Forest management plans to implement the legislatively prescribed purposes of all National Forests. Thus, *the Commission defers to the expertise of the Forest Service for a determination of the statutorily prescribed purposes of the National Forests.* Any party seeking to argue that a particular Forest management plan does not validly implement the prescribed purposes has a very heavy burden to meet.

*Rainsong,* 65 Fed.Energy Reg.Comm'n Rep. (CCH) at 61,574–75 (footnotes omitted) (emphasis added); *accord Joseph M. Keating,* 70 Fed.Energy Reg.Comm'n Rep. (CCH) par. 61,240, 61,742 (Feb. 28, 1995); *see also Warren B. Nelson,* 61 Fed.Energy Reg.Comm'n Rep. (CCH) par. 61,069 (Oct. 16, 1992). The Commission's deference to the Forest Service's interpretation of its own purposes is a permissible construction of § 4(e) of the FPA.

However, more than deference guided the Commission in this case. The Commission apparently interpreted the 1990 Forest Plan's emphasis on esthetic environmental concerns as "the purpose" of the National Forest reservation and decided that no hydroelectric utilization of the running water of Lena Creek could be consistent, under any conditions or circumstances, with environmental purity.

The Commission concluded that the project was inconsistent with the purposes of the 1990 Forest Plan, and therefore, it was inconsistent with the purposes of the forest. While it may be possible to make one proposition follow the other, the analysis of the Forest Service and of the Commission should focus on the statutorily prescribed purposes of the forest reservation, as mandated by § 4(e), rather than looking only to the 1990 Forest Plan. The Commission's error was not its reliance on the Forest Service staff work, but on both agencies' failure to analyze the consistency of the project with the purposes of the Olympic National Forest as required by the statute.

We remand so that the Commission may engage in balancing developmental and nondevelopmental issues raised by the proposed

project while the Commission carries out its statutory duty to decide whether the project is consistent with the purposes of the Olympic National Forest.

PETITION GRANTED and REMANDED.