**RAINSONG COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 93–71035.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 1995.

Opinion Filed March 19, 1996.

Withdrawn Feb. 6, 1997.

Decided Feb. 6, 1997.

---

Christopher D. Williams, San Andreas, CA; William Devine, pro se, Maple Falls, WA, for the petitioner.

Timm L. Abendroth, Federal Energy Regulatory Commission, Washington, DC, for the respondent.

Before: GOODWIN, SNEED, and KLEINFELD, Circuit Judges.

### ORDER

The opinion filed March 19, 1996, appearing at 78 F.3d 1435 (9th Cir.1996), is WITHDRAWN.

### OPINION

GOODWIN, Circuit Judge:

Rainsong Company, following denial of its petition for rehearing by the Federal Energy Regulatory Commission (the Commission), seeks review of an order rejecting Rainsong's application for a hydropower license on a stream within the Olympic National Forest.

## I.

### FACTS AND ADMINISTRATIVE HISTORY

Rainsong's efforts to build a hydroelectric power plant (the project) began in 1981. Rainsong applied for a license from the Commission pursuant to the Federal Power Act (FPA), 16 U.S.C. §§ 791a *et seq.* The license application proposed building the project on Lena Creek.

The first application was denied by order of the Director of the Commission's Office of Hydropower Licensing on June 29, 1987. The denial was based on the conclusion of the Secretary of Agriculture, relying on the Forest Service's staff reports, that the project would interfere and be inconsistent with the purpose of the Olympic National Forest.

Rainsong appealed that order, and the Commission granted its appeal on January 25, 1990.[1] The order reinstated Rainsong's application and gave Rainsong six months to try to resolve the Forest Service's objections and to amend the license application if needed.[2] Rainsong filed an amended application on July 23, 1991. The application proposed construction of a five-megawatt hydroelectric plant. The project would consist of a ten-foot-high, 120–foot–wide concrete dam to divert water from Lena Creek through an intake structure, which would include a 2,300–foot–long steel pipeline and a 1,500–foot–long "penstock." The water would flow through a penstock into a large, concrete power house, and then out through a 150–foot–long tailrace into the Hamma Hamma River. The project would also require a six-mile underground transmission line, a fifty-foot connecting road from the powerhouse to an existing Forest Service road, and other facilities.

The staffs of the Forest Service and the Commission jointly prepared an Environmental Assessment (EA) of the project. The EA concluded that the project would be inconsistent with the Forest Service's 1990 Land Resource Management Plan for the Olympic National Forest (Forest Plan), which designates the Lena Creek area for recreation in a natural, undeveloped setting.[3]

The EA delivered its opinion that the project would detract from the "natural appearance" of the area, parts of which could be seen from a popular hiking trail. The EA did not add, however, that a substantial number of clear cuts could also be viewed from the same trail. The EA asserted that the project would create an attractive nuisance, warning signs and fences would be needed to prevent vandalism and possible injury to persons who might not heed warnings signs, all of which would impact the pre-construction scenic beauty. The EA also asserted that the diversion of water at the intake facility would reduce the pleasant sights and sounds of Lena Creek's rushing water. Moreover, the EA concluded that the project would be inconsistent with the Forest Service's Spotted Owl Plan, which restricts development in areas of owl habitat, including Lena Creek. Based on the foregoing conclusions, the Commission issued an order denying Rainsong's license application.

Rainsong again filed a request for rehearing, arguing that the EA's factual conclusions were erroneous and that the Commission had failed to balance developmental considerations with the non-developmental ones. On October 22, 1993, the Commission denied the request for rehearing.[4] Rainsong timely petitioned for review arguing both that the Commission failed to balance and that the

1. *Rainsong Co.,* 50 Fed. Energy Reg. Comm'n Rep. (CCH) par. 61,079, at 61,217 (Jan. 25, 1990).

2. *Id.* at 61,219.

3. The previous Forest Plan, promulgated in 1978, also provided that the Lena Creek area be managed to preserve its recreational nature. *See Rainsong Co.,* 63 Fed.Energy Reg. Comm'n Rep. (CCH) par. 61,157, at 61,994 (May 5, 1993). However, under the 1978 plan, the Lena Lake area was to be managed to protect the area's

"recreational values" and the goals were to be the "maintenance and enhancements of the recreation area." *Rainsong Co.,* 50 FERC at 61,-079. The plan also contemplated "concentrated recreation use." *Id.* at 61,079 n. 6. In the 1990 plan, the Forest Service changed its plan to "an experience mostly free from the sights and sounds of other people," 63 FERC at 61,157, "in a Primitive or Semi–Primitive setting." *Id.* at n. 11.

4. *Rainsong Co.,* 65 Fed.Energy Reg. Comm'n Rep. (CCH) par. 61,104 (Oct. 22, 1993).

Commission abdicated its authority in relying on the 1990 Forest Plan to determine the purposes of the forest. This court has jurisdiction pursuant to the FPA, § 313(b), 16 U.S.C. § 825*l*(b).

## II.

### STANDARD OF REVIEW

 Our review of agency licensing decisions is limited to asking whether the agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, or if it was taken without observance of procedure required by law. *Loomis Cabinet Co. v. OSHRC*, 20 F.3d 938, 941 (9th Cir.1994). An agency's interpretation of a statutory provision or regulation it is charged with administering is entitled to a high degree of deference. *Todd Shipyards Corp. v. Director, Office of Workers Compensation Programs*, 950 F.2d 607, 610 (9th Cir. 1991). Courts must, however, reject administrative orders that are contrary to congressional intent. *Id.* Here we have a competition between two environmental values. Water power using abundant rainfall and favorable topography reduces negative environmental consequences of burning fossil fuel. However, water power engineering in a forest has its own environmental consequences.

## III.

### DISCUSSION

Rainsong raises two arguments against the Commission's order. First, Rainsong claims that the Commission did not balance developmental and non-developmental factors in its determination. Second, Rainsong contends that the Commission effectively abdicated its authority in favor of relying unduly on the Forest Plan which it understood as strongly protective of the forest's esthetics. We note at the outset that these two arguments are interrelated. Each argument challenges the Commission's interpretation of § 4(e) of the FPA.[5]

---

5. Section 4(e) is codified at 16 U.S.C. § 797(e).

## A.

### FPA SECTION 4(e)—ITS PLAIN MEANING

The Federal Energy Regulatory Commission shall be guided by § 4(e) of the FPA when considering project applications. Section 4(e) gives the Commission power to "issue licenses ... for the purpose of constructing ... project works" on waters subject to Congress' Commerce Clause jurisdiction and on public lands and reservations of the United States. As originally enacted, the statute directed the Commission to exercise this authority for the "development, transmission, and utilization of power." *See* Federal Power Act, ch. 285, § 4, 41 Stat. 1060, 1065–66 (1920) (codified at 16 U.S.C. § 797(e)). In 1986, to increase sensitivity to environmental concerns, Congress added a provision to the end of § 4(e) that directs the Commission to give "equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife ..., the protection of recreational opportunities, and the preservation of other aspects of environmental quality" in addition to "power and development purposes" "in deciding whether to issue any license." Electric Consumers Protection Act of 1986, Pub.L. No. 99–495, § 3(a), 100 Stat. 1243, 1243 (1986) (codified at 16 U.S.C. § 797(e)). With respect to "reservations,"[6] the statute further directs that licenses "shall be issued ... only after a finding by the Commission that the license will not interfere or be inconsistent with the purpose for which such reservation was created or acquired." 16 U.S.C. § 797(e).

 An agency's interpretation of a legislative delegation is entitled to deference where Congress' intent on the issue is not explicit. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the ad-

---

6. The Olympic National Forest is a "reservation" for purposes of the FPA. 16 U.S.C. § 796(2) (" '[R]eservations' means national forests....").

ministrator of an agency." *Id.* However, courts have a duty to make sure that the agency followed the relevant statute. *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983) ("reviewing courts ... must not rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute"). In order for this Court to affirm the Commission's interpretation of § 4(e), we must either hold that the agency gave effect to the intent of Congress or, in the alternative, that the statute is inherently ambiguous, making the Commission's interpretation reasonable and worthy of deference.

We look first to the plain meaning of § 4(e). We do not find it to be ambiguous and, thus, we will accept the Commission's interpretation of § 4(e) only if it is compatible. with Congress' clear intent as expressed by the plain meaning of the statute.

■ The Commission properly interprets § 4(e) to require a threshold determination of consistency with the purposes of a forest reservation before balancing developmental and non-developmental purposes in deciding whether to issue a license.[7] An analysis of the structure and purposes of § 4(e) reveals the problems with Rainsong's assertion that the Commission must give equal consideration to developmental and non-developmental issues in determining whether a hydropower project is consistent with the purposes of the forest reservation. The plain meaning of the statute supports the Commission's two-step analysis in which it balances interests only after determining the project's consistency with the forest's purpose.

First, the "reservation" clause forms part of a series of provisos designed to give special attention to the licensing process in certain situations. We must interpret the "reservation" clause consistently with these provisos of which it is a part. These provisos clearly impose threshold requirements wholly different and separate from the Commission's ordinary licensing determination in which it balances developmental and non-developmental purposes. No one contends, for example, that the Secretary of the Army and the Chief of Engineers must balance developmental and non-developmental purposes in deciding whether to approve a project. *See* 16 U.S.C. § 797(e). Further, balancing has no part in the requirement to submit non-navigation projects on Government dams to Congress or on whether notice need be given as to a license application. *See id.* Similarly, the Commission need not balance developmental and non-developmental purposes in determining that a "license will not interfere or be inconsistent with the purpose for which [a] reservation was created or acquired." *Id.*

Second, the Commission's interpretation does not read the 1986 amendment out of the statute for licenses on reservations. Rather, the 1986 amendment forms an integral part of the second inquiry. A Commission determination that a license would not interfere or be inconsistent with the purposes of a reservation does not end the inquiry. The Commission must then, before issuing a license, give equal consideration to developmental and non-developmental purposes. Only after the Commission makes both determinations may it issue any license. The Commission can deny a license without resort to balancing but cannot issue one without giving equal consideration to developmental and non-developmental purposes. Again, looking to the other provisos in § 4(e), no one contends that approval of a license for a project on navigable waters by the Chief of Engineers and the Secretary of the Army results in immediate issuance of a license. Rather, after the Chief of Engineers and the Secretary of the Army approve the project, the Commission must still engage in the required balancing.

Third, an interpretation that requires the Commission to balance developmental and non-developmental *purposes* in determining whether a license is consistent with the *purposes* of a forest involves significant conceptual difficulties. The purposes of a reserva-

---

7. *See Rainsong, Co.,* 65 Fed.Energy Reg. Comm'n Rep. at 61,576 ("Since we find that the project is inconsistent with the Forest Plan, we do not reach any balancing of developmental and non-developmental values.").

tion may not equate with the purposes listed in § 4(e). Yet, Rainsong wants the Commission to incorporate all the various purposes into the consistency determination. The better course and the course outlined in the statute separates the inquiries. The Commission must consider all the purposes not as part of one grand inquiry, but in two steps—a consistency inquiry in which it looks to the purposes of the reservation and a second inquiry in which it looks to the purposes listed in § 4(e). Rainsong's interpretation effectively substitutes the purposes listed in § 4(e) for the purposes of the reservation. Rainsong frames the test as "the Commission must give equal consideration to the developmental and non-developmental *issues* to determine if the hydropower project is consistent" with the purposes of the reservation. Thus, Rainsong implicitly appears to recognize the difficulty of grouping all the purposes into one inquiry and its solution violates the express direction of the statute to look at "purposes."

The Commission's interpretation properly accounts for the language, purposes and structure of § 4(e), and thus the Commission did not need to engage in any balancing before denying Rainsong's application if it properly found that the license would interfere with or be inconsistent with the purpose for which the reservation was created.

## B.

### ABDICATION OF AUTHORITY

■ The Commission's presumptive reliance on the Forest Service's 1990 Plan to determine the "purpose for which" Olympic National Forest "was created or acquired" constitutes an impermissible interpretation of its statutory mandate. We thus remand to the Commission for proceedings in accordance with this opinion.

Under the FPA, the Commission has the "exclusive authority to issue all licenses." *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 775, 104 S.Ct. 2105, 2111, 80 L.Ed.2d 753 (1984); *see also* 16 U.S.C. § 797(e). Section 4(e) provides that "licenses shall be issued within any reservation only after a finding by the Com-

mission that the license will not interfere or be inconsistent with the purpose for which such reservation was created or acquired."

■ The statute does not indicate how the Commission is to determine "the purpose for which [a] reservation was created or acquired." If the Commission were simply interpreting § 4(e) in making this determination, this Court must uphold a permissible interpretation of the statute by the Commission. *See City of Seattle v. FERC,* 923 F.2d 713, 715 (9th Cir.1991) (the court of appeals generally shows "great deference" to the Commission's interpretation of the law it is charged with administering). However, in relying on the Forest Plan to make its determination of the purposes of the forest reservation, the Commission not only interprets § 4(e) but also interprets the National Forest Management Act ("NFMA"). Effectively, the Commission has interpreted the NFMA as directing the Forest Service to determine the "purpose for which" a forest "was created or acquired." This Court need not defer to the Commission's interpretation of a statute it is not charged with administering.

Congress, by statute, has established "the purpose for which a [forest] was created or acquired." *See* 16 U.S.C. § 475 ("No national forest shall be established, except to improve and protect the forest within the boundaries, or for the purpose of securing favorable conditions of water flows, and to furnish a continuous supply of timber for the use and necessities of the citizens of the United States...."); 16 U.S.C. § 528 ("It is the policy of Congress that the national forests are established ... for outdoor recreation, range, timber, watershed, and wildlife and fish purposes."). The Forest Service is legislatively mandated to "manage" the land, not to determine from time to time for what purpose the forest was created. *See* 16 U.S.C. §§ 1600 *et seq.* The Forest Service develops "resource management plans for units of the National Forest System," 16 U.S.C. § 1604(a), "in accordance with the principles set forth in the Multiple–Use–Sustained Yield Act ... and the National Environmental Policy Act," 16 U.S.C. § 1602, but cannot alter the original purposes of a forest reservation.

The Commission should focus on the statutorily prescribed purposes of the forest res-

ervation as mandated by § 4(e). *See* 16 U.S.C. §§ 475, 528. Though the Commission may look to Forest Management Plans for the balancing portion of the statute, they are not determinative of the purpose of the forest reservation. *United States v. New Mexico,* 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978), establishes that "Congress intended national forests to be reserved for only two purposes—'to conserve the water flows, and to furnish a continuous supply of timber for the people.' ... National forests were not to be reserved for esthetic, environmental, recreational, or wildlife preservation purposes." *Id.* at 707–08, 98 S.Ct. at 3017–18.

This is not to say that only water flows and timber may be considered in determining whether to grant a permit. The "purpose for which such reservation was created" controls the finding that is a prerequisite to issuing a license within the reservation. But the statute does not limit the Commission to that condition. The statute requires a second inquiry. The Commission, in deciding whether to issue a permit (including a permit on a reservation), "shall give equal consideration to the purposes of energy conservation, the protection, mitigation of damage to, and enhancement of, fish and wildlife (including related spawning grounds and habitat), the protection of recreation opportunities, and the preservation of other aspects of environmental quality." 16 U.S.C. § 797(e). A proposed license could be consistent with the purpose for which the national forest reservation was created, yet fail this "equal consideration" test because of its effect on "environmental quality."

We do recognize that this interpretation of the Commission's duties under § 4(e) can possibly lead to inconsistent determinations of the appropriate use of a National Forest. *See* 16 U.S.C. § 1604(i) ("Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans."). Such inconsis-

tencies may result when hydropower plants are built in forests, and one agency has exclusive control over hydropower licenses and another has control over forest management. We do note that Congress has provided a means to reduce any inconsistencies by giving the Secretary of Agriculture authority to impose conditions necessary for the adequate protection and utilization of a forest in any hydropower license. *See* 16 U.S.C. § 797(e); *Escondido,* 466 U.S. at 773–74, 104 S.Ct. at 2110–11 ("Congress was no doubt interested in centralizing federal licensing authority into one agency, but it is clear that it did not intend to relieve the Secretaries of all responsibility for ensuring that reservations under their respective supervision were adequately protected."). Congress thus intended a role for the Forest Service in hydropower licensing decisions, but it did not intend for the Forest Service to make a determination of the purposes of the forest.

The Commission, in giving presumptive weight to the Forest Plan, has upset the statutory scheme. On remand, the Commission must make an independent determination as to whether "the license will not interfere or be inconsistent with the purpose for which" Olympic National Forest "was created or acquired."

PETITION GRANTED and REMANDED.