**WARDS COVE PACKING CORPORATION, Plaintiff–Appellant,**

v.

**NATIONAL MARINE FISHERIES SERVICE; James W. Balsiger, in his capacity as Regional Administrator, Alaska Region,**

**National Marine Fisheries Service; Donald L. Evans, in his capacity as Secretary of Commerce; and U.S. Department of Commerce, Defendants– Appellees.**

No. 01–35309.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2002.

Filed Oct. 15, 2002.

Jess G. Webster and Mitchell A. Broz, Mikkelborg, Broz, Wells & Fryer, PLLC, Seattle, WA, for the plaintiff-appellant.

Mark Brown, Katherine Hazard and Ellen J. Durkee, United States Department of Justice, Environment & Natural Re-

sources Division, Washington, DC, for the defendants-appellees.

Before HAWKINS and GOULD, Circuit Judges, and WARE,* District Judge.

## OPINION

WARE, District Judge.

The issue in this case is whether, under federal regulations, a commercial fishing company is qualified to participate in both the sablefish and halibut fishing industries if it fished for only one species during the regulatory base period. Wards Cove Packing Corporation ("Wards Cove") appeals the district court's grant of summary judgment in favor of the National Marine Fisheries Service's ("NMFS") decision finding Wards Cove ineligible to harvest sablefish in the regulated area because, during the qualifying base period set forth in the regulations, it harvested only halibut. The district court found the qualification provisions of the regulations ambiguous and deferred to a NMFS interpretive ruling which held that only persons actually landing sablefish during the requisite period were qualified to participate in the sablefish industry.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's finding that the regulation is ambiguous. We find no ambiguity in the plain language of the regulation, which allows qualification based on harvesting either species. We reverse and remand the case to the district court for further proceedings consistent with this opinion.

---

* The Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

## BACKGROUND

In 1976, Congress created the "Magnuson–Stevens Fishery Conservation and Management Act" in order to conserve and manage all fishery resources found off the coasts of the United States. *See* 16 U.S.C. § 1801 *et seq.* In 1982, the Northern Pacific Halibut Act was passed to implement the Convention between the United States and Canada for the Preservation of the Halibut Fishery of the Northern Pacific Ocean and Bering Sea. *See* 16 U.S.C. § 773.

Pursuant to these statutes, regional fishery management councils were established to recommend fishery management plans throughout the United States. The North Pacific Fishery Management Council ("Council") was created to recommend fishery management plans for any fishery in the Arctic Ocean, the Bering Sea and the Pacific Ocean seaward of Alaska. 16 U.S.C. § 773c(c). Prior to the adoption of fishery management plans in the North Pacific region, fishing for halibut and sablefish (also known as black cod) had become a race. Fishermen would harvest as much fish as possible before the catch limit was reached and a particular fishery closed. This method led to many problems for fishermen, as well as the public, regarding the pricing and availability of fresh fish.

In December of 1988, the Council started to explore options for limiting access to sablefish. In January of 1991, the Council decided to explore similar access limits to halibut. At the end of 1991, the Council recommended a quota system called Individual Fishing Quota ("IFQ"), or annual catch limit, a program for the management of the fixed gear[1] sablefish and halibut fisheries in the region.

During the months following the Council's proposal, the economic and environmental impacts of the proposed IFQ program were analyzed and a final report published on September 15, 1992. Proposed regulations implementing the IFQ program were published in the Federal Register on December 3, 1992. *See* Pacific Halibut Fisheries, 57 Fed.Reg. 57,130.

On November 9, 1993, the Secretary of Commerce, who was delegated the authority to manage and conserve coastal fisheries pursuant to the Magnuson Act, promulgated final regulations implementing the IFQ program. Pacific Halibut Fisheries, 58 Fed.Reg. 59,375, 59,402 (Nov. 9, 1993) (to be codified at 50 C.F.R. Part 679). These regulations govern commercial fisheries that use fixed gear to harvest sablefish and halibut in and off of Alaska and in the Bering Sea/Aleutian Islands region. *See* 50 C.F.R. § 679.1(d).

Under the regulations, the National Marine Fisheries Service (NMFS) of the Department of Commerce administers both the halibut and sablefish IFQ programs through a unitary application and appeals process. Under the regulations, on or after October 18, 1994, an owner or lessee of a commercial vessel desiring to harvest halibut or sablefish or both in the regulated area must file an application showing that the person is qualified.

Significant to this case, the regulations define a person as "qualified" if the applicant is a person:

> That owned a vessel that made legal landings of *halibut or sablefish,* harvested with fixed gear, from any IFQ regulatory area in any QS qualifying year.

---

[1]. "Fixed gear" refers to all hook and line fishing gears—including longlines, jigs, handlines and troll gear—in the Gulf of Alaska and the Bering Sea/Aleutian Islands and pot gear for sablefish in the Bering Sea/ Aleutian Islands. *See* 50 C.F.R. § 679.2.

50 C.F.R. § 679.40(a)(2)(A) (emphasis added). Section 679.40(a)(3) defines a QS qualifying year as 1988, 1989 or 1990.

Once an applicant is found to be qualified, i.e., having landings of either species during the qualifying base period, the regulations provide a multi-step process which the regional director is required to follow for calculating an annual quota share of fish which the applicant would be allowed to take. For purposes of calculating the annual quota, the regulations address each species separately. In order to receive an annual quota share for a particular species, the applicant must have had actual landings of that particular species during a species base period, which was different from the qualifying base period. If the applicant is found to have met the requirements for a particular species, the regulations require the regional director to calculate an annual quota for that species for the applicant.

Section 679.40(a)(4)(i) establishes 1984 through 1990 as the species base period for halibut and provides that initial quota share is dependent on the person's highest total legal landings during that period of time:

> (i) Halibut QS. The Regional Administrator shall calculate the halibut QS for any qualified person in each IFQ regulatory area based on that person's highest total legal landings of halibut in each IPHC regulatory area for any 5 years of the 7–year halibut QS base period 1984 through 1990. The sum of all halibut QS for an IFQ regulatory area will be the halibut QS pool for that area.

50 C.F.R. § 679.40(a)(4)(i).

Section 679.40(a)(4)(ii) establishes 1985 through 1990 as the species base period for sablefish, with a separate calculation for quota share:

> (ii) Sablefish QS. The Regional Administrator shall calculate the sablefish QS for any qualified person in each IFQ regulatory area based on that person's highest total legal landings of sablefish in each groundfish reporting area for any 5 years of the 6–year sablefish QS base period 1985 through 1990. The sum of all sablefish QS for an IFQ regulatory area will be the sablefish QS pool for that area.

50 C.F.R. § 679.40(a)(4)(ii).

Once a QS is assigned, each year the person must apply for an individual fishing quota (IFQ). The regional director allocates to that person an IFQ by multiplying the person's initial quota share by the annual allowable catch for each species. 50 C.F.R. § 679.40(b)-(c).

Pursuant to these regulations, Wards Cove made an application for QS for both halibut and sablefish. In its application, Wards Cove stated that it had made legal landings of halibut during the years of 1988, 1989 and 1990 and of sablefish during the years of 1985, 1986 and 1987.[2] Although the NMFS issued an initial QS to Wards Cove for halibut, it refused to issue an initial QS to Wards Cove for sablefish. The government contended that, since Wards Cove had not made legal landings of sablefish during the qualifying years of 1988, 1989 or 1990, it was ineligible for an initial QS for sablefish.

Wards Cove protested that the regulations set forth in § 679.40(a)(2)(A), which define a person who qualifies for initial QS shares, require only that "legal landings of halibut *or* sablefish" be made within any qualifying year. Since Wards Cove indis-

---

**2.** The administrative record shows that Wards Cove made legal landings for both halibut and sablefish between 1984–1987, but decided to focus on the halibut fisheries between 1988–

1990. On this appeal, Wards Cove does not dispute NMFS's position that it did not make any legal landings of sablefish during the qualifying years of 1988–1990.

putably made legal landings of one of the protected species during the qualifying base period and had landings of both species during the species base period, it argued that it was entitled to QS for both halibut and sablefish. The government rejected Wards Cove's position without explanation and Wards Cove filed a complaint for judicial review.

On November 22, 2000, Wards Cove moved for summary judgment in the district court on the ground that it is a "qualified person" under the regulations, that the regulations are clear and unambiguous and that, therefore, it is entitled to QS for both halibut and sablefish.

The NMFS filed an opposition to Wards Cove's motion for summary judgment, as well as a cross-motion for summary judgment, regarding the issue of regulatory construction. In its motion, NMFS argued that on November 28, 1995, it had implemented an interpretive rule, which had been adopted in two subsequent agency decisions, which clarified that the regulations do not permit a person landing only one type of fish during the qualifying period to qualify for QS in both types of fisheries. *See* Limited Access Management of Federal Fisheries In and Off of Alaska, 60 Fed.Reg. 58,528–01; *In re Application of Patrick Selfridge*, NMFS Office of Administrative Appeals Decision, Appeal No. 95–0023; *In re Application of Jeff W. Hanson*, NMFS Office of Administrative Appeals Decision, Appeal No. 98–0048.

The district court issued its decision on March 8, 2001, and concluded that the regulation was ambiguous because it describes a qualified person as one that has made legal landings of halibut *or* sablefish, but contains separate provisions for the calculations and assignments of initial QS of halibut *and* sablefish. The district court concluded that it was possible to interpret the regulation in the manner that

either party argued. Therefore, it ruled that the agency's interpretation of the regulation was entitled to deference and was not arbitrary or capricious. The district court found that Wards Cove's landings of halibut did not qualify it for an initial QS for sablefish. Judgment was entered in favor of NMFS and against Wards Cove. Wards Cove filed a timely appeal.

## STANDARD OF REVIEW

 The district court's grant of summary judgment upholding an agency decision is reviewed *de novo. Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1447 (9th Cir. 1996). "The appropriate inquiry is whether the agency's decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' In making this inquiry, we ask whether the agency' considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Natural Res. Def. Council v. United States Dep't of the Interior*, 113 F.3d 1121, 1123–24 (9th Cir.1997) (citations omitted). An agency's interpretation of regulations it is charged with administering is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation. *Rainsong Co. v. Federal Energy Regulatory Comm'n*, 106 F.3d 269, 272 (9th Cir.1997); *Rendleman v. Shalala*, 21 F.3d 957, 961 (9th Cir.1994).

## DISCUSSION

The sole issue in this appeal is whether the district court erred by finding that the subject regulations are ambiguous and thus by deferring to an interpretive rule by the National Marine Fisheries Service. Wards Cove argues that the regulation is not ambiguous and, therefore, that the district court erred by deferring to NMFS's

interpretive rule regarding the definition of "qualified person." NMFS contends that the regulation is ambiguous and, therefore, the district court properly relied on the agency's interpretive rule, which is reasonable and consistent with both the actual operation of the fisheries as well as Congressional intent.

■ As the district court noted, the plain meaning of a regulation governs and deference to an agency's interpretation of its regulation is warranted only when the regulation's language is ambiguous. *See Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Therefore, the starting point of our analysis must begin with the language of the regulation.

50 C.F.R. § 679.40(a)(1) states, in relevant part, that "The Regional Administrator shall initially assign to qualified persons, on or after October 18, 1994, halibut and sablefish fixed gear fishery QS that are specific to IFQ regulatory areas and vessel categories."

Section 679.40(a)(2)(A) defines a "qualified person" as a person: "[t]hat owned a vessel that made legal landings of halibut or sablefish, harvested with fixed gear, from any IFQ regulatory area in any QS qualifying year." Section 679.40(a)(3) defines a QS qualifying year as 1988, 1989 or 1990.

■ This language is clear and unambiguous. It provides that a person that made a legal landing of either halibut *or* sablefish is qualified to receive an initial QS. The Secretary of Commerce promulgated regulations which combine qualifications for engaging in commercial harvesting of halibut and sablefish. A single definition of a "qualified person" is used ("legal landings of halibut or sablefish"), and the same qualifying period is used for both species of fish (1988, 1989 or 1990). As Wards Cove correctly notes, the language contained in this subsection

creates an "entitlement" to QS, provided that Wards Cove meets the criteria to qualify for such an entitlement. *See Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir.1998).

The government asserts that Section 679.40(a)(4), which regulates calculation of initial QS, uses a different qualifying period for halibut as opposed to sablefish and creates an ambiguity necessitating deference to the agency's interpretive ruling. Indeed, subsection 679.40(a)(4) does differentiate between halibut and sablefish in the calculation of the initial QS. However, we have no difficulty reconciling the plain language of subsection 679.40(a)(2), which defines when a person is qualified to receive an initial QS, with subsection 679.40(a)(4), which details how the QS shall be calculated.

Under the plain language of subsection (a)(2), any owner of a fixed gear vessel who made a legal landing of either "halibut or sablefish" in the regulated area in 1988, 1989 or 1990 is qualified to receive an initial QS in "halibut and sablefish." 50 C.F.R. § 679.40(a)(2). Under (a)(4), the actual QS, which a particular person is entitled to receive in relation to all commercial owners or lessees, is calculated based on the person's highest landings of each specific fish species during a different base period for each species: 1984 through 1990 for halibut and 1985 through 1990 for sablefish. *Id.* § 679.40(a)(4). This gives all applicants the benefit of their highest and best years of operation. Although the regulation requires a multistep analysis before an IFQ can be awarded, it is not ambiguous. Therefore, we need not defer to the NMFS's interpretive ruling.

Our finding that the regulation is not ambiguous will not open the door to permit fishermen who were not previously dependent on either the halibut or sablefish fisheries to now obtain QS for such fisheries

because the regulation provides that an applicant must have had legal landings of either halibut and sablefish during the years between 1984 through 1990 to qualify for QS in either fishery. The assignment of a QS only entitles the person to conduct commercial fishing in the regulated area. Each year, the regional director establishes the annual allowable catch. Each year, the qualified person must apply for an individual fishing quota, which is determined by multiplying the person's QS by the annual allowable catch.

Moreover, in an earlier opinion, we noted this backward-looking feature of the regulations. *See Alliance Against IFQs v. Brown,* 84 F.3d 343, 346 (9th Cir.1996). At the time the regulations first became effective, the only persons qualified to harvest in the regulated area were those who had engaged in commercial fishing operations in that area for a five- to seven-year period prior to the adoption of the regulations. In *Alliance,* we found this feature permissible because it discouraged extraordinary fishing activity simply to create an artificial quota. *Id.* at 347–48. In that same vein, in this case, we find it clear that the regulations recognize that from year-to-year a fixed gear commercial operator might have switched between the two species of fish in response to market conditions, but would still be entitled to catch both species, with the amount of allowable catch based on actual landings of that species.

Since the regulation is not ambiguous, we conclude that the district court erred by deferring to the NMFS's interpretive rule and administrative appeals which have addressed this regulation. *See Christensen v. Harris County,* 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

Deference to such findings is only proper where a regulation is ambiguous. *Id.*

## CONCLUSION

We reverse the district court's grant of summary judgment in favor of the NMFS and remand this case to the district court with instructions to vacate its judgment in favor of NMFS and enter judgment in favor of Wards Cove. In addition, since Wards Cove is the prevailing party in this action, we grant Wards Cove's request for attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

*REVERSED AND REMANDED.*