MOUNTAIN RHYTHM RESOURCES, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Mountain Water Resources; Watersong Resources, Petitioners,

v.

Federal Energy Regulatory Commission, Respondent.

Nos. 00–70357, 00–70963.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2001.

Submission Withdrawn Feb. 14, 2002.

Resubmitted and Filed Aug. 23, 2002.

Kurt Denke, Seattle, WA, for the petitioner.

David H. Coffman and Larry D. Gasteiger, Federal Energy Regulatory Commission, Washington, DC, for the respondent.

Thomas J. Young, Assistant Attorney General, Olympia, WA, for the intervenor-respondent.

R. Justin Smith, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, for the amicus curiae.

Before: KLEINFELD and GOULD, Circuit Judges, and ROLL,* District Judge.

GOULD, Circuit Judge.

Mountain Rhythm Resources, Mountain Water Resources, and Watersong Resources (collectively "Mountain Rhythm Companies") petition for review of Federal Energy Regulatory Commission (FERC) orders dismissing their respective applications for licenses to build hydroelectric

---

* The Honorable John M. Roll, District Judge for the District of Arizona, sitting by designation.

plants. Because the proposed projects were located in Washington's coastal zone, FERC needed the State of Washington to certify that the projects were consistent with the state's Coastal Zone Management Program before FERC could consider the license applications. The State of Washington, in turn, required approval from the county where the projects were sited before it would consider whether to certify the projects' consistency with state coastal protection. Mountain Rhythm Companies declined to apply for county approval, despite being advised by the State of Washington and by FERC that a county Shoreline Management Act (SMA) permit was needed to process the state certifications. In the absence of state certifications, FERC dismissed the hydropower license applications. We deny the petitions for review.

## I.

■ We start with the fundamental proposition that "[t]he Federal Power Act ('FPA') requires that a party seeking to construct, operate or maintain a hydroelectric power facility must obtain a license from FERC." *High Country Resources v. FERC,* 255 F.3d 741, 742 (9th Cir.2001) (citing 16 U.S.C. § 817). But although we consider a federal regulatory regime, by statute Congress has required that FERC coordinate its decisions with certain specified federal and state interests. In the context of considering related requirements of the federal Clean Water Act, we have explained, "FERC's authority to provide such [hydroelectric power] licenses ... is not unlimited." *High Country Resources,* 255 F.3d at 742. In this case, we deal with federal and state law concerns for protecting and managing coastline that Congress has declared to be limitations on FERC's power. Specifically, the Coastal Zone Management Act (CZMA), 16 U.S.C. §§ 1451–1465, provides that if a hydropower project is located in a state's coastal zone, then FERC cannot issue the license unless the state's applicable agency concurs that the proposed project is consistent with the state's Coastal Zone Management Program, or the state's concurrence is conclusively presumed based on the state's failure to act by timely objection, or the Secretary of Commerce, on his or her own initiative or on appeal by applicant, overrides a state objection by finding a planned activity consistent with objectives of the CZMA or otherwise necessary for national security. 16 U.S.C. § 1456(c)(3)(A).

Once a FERC applicant applies to a state for a consistency certification, the state has six months to review this application, if it contains all necessary data and information. 16 U.S.C. § 1456(c)(3)(A). If six months pass without any objection from the state, then the state, by operation of the federal statute, forfeits its right to object to the project, and the project's consistency with the state's coastal program "shall be conclusively presumed" by FERC. *Id.* However, this six-month period for objection does not commence, by federal regulation, until the state has received all necessary data and information required by the state's Coastal Zone Management Program to begin review. 15 C.F.R. § 930.60. The phrase "necessary data and information" is expressly defined by regulation to include everything identified in the state's Coastal Zone Management Program as necessary for review of a certification. 15 C.F.R. § 930.58(a)(2). A request by the state for additional, as opposed to required, information does not stop the six-month clock.

If the state objects to the applicant's certification, that state decision is not necessarily fatal to the FERC license application. The FERC license applicant may appeal to the Secretary of Commerce for an override of the state's objection on the

grounds that the applicant's proposed project is "consistent with the objectives of [the CZMA] or is otherwise necessary in the interest of national security." 16 U.S.C. § 1456(c)(3)(A).

Coastal zone boundaries, drawn by each state, show the areas subject to a state-devised Coastal Zone Management Program protecting coastal zones. 16 U.S.C. § 1455. The states' coastal zone maps and management plans must be approved by the National Oceanic and Atmospheric Administration (NOAA).[1] 16 U.S.C. § 1454.

> The CZMA defines the coastal zone as: the coastal waters ... and the adjacent shorelands ..., and includes islands, transitional and intertidal areas, salt marshes, wetlands, and beaches.... The zone extends inland from the shorelines only to the extent necessary to control shorelands, the uses of which have a direct and significant impact on the coastal waters....

16 U.S.C. § 1453(1).

NOAA regulations instruct states on mapping their coastal zones:

> The inland boundary must be presented in a manner that is clear and exact enough to permit determination of whether property or an activity is located within the management area.... *An inland coastal zone boundary defined in terms of political jurisdiction (e.g., county, township or municipal lines)*, cultural features (e.g., highways railroads), planning areas (e.g., regional agency jurisdictions, census enumeration districts), or a uniform setback line is acceptable

so long as it includes the areas identified.

15 C.F.R. § 923.31(a)(8) (emphasis added).

Against the background of these laws, Washington has designated the fifteen counties touching the coast of the Pacific Ocean and Puget Sound as its coastal zone. NOAA, with its delegated authority from the Secretary of Commerce, approved the coastal zone map and the Washington Coastal Zone Management Program (WCZMP) regulating the state's coastal zone.

Petitioners are three separate companies, owned by William Devine, that applied to FERC for licenses to build and operate small hydroelectric power plants located on three separate creeks that are tributaries of the Nooksack River[2] in Whatcom County in northern Washington. Mountain Rhythm Companies initiated the FERC licensing application process in 1983. Each of petitioners filed a separate application for its hydroelectric project.

Whatcom County touches Puget Sound, and Washington has designated the entire county as a coastal zone. But Whatcom County also reaches east far into the peaks of the vast and rugged Cascade Range. The hydropower project sites at issue are at least 45 miles by winding river distance and 30 miles straight-line distance inland from Puget Sound, and are between 900 and 4000 feet above sea level. In August 1992, FERC informed Mountain Rhythm Companies that under the CZMA, state certification was required before FERC

---

1. This authority is granted by statute to the Secretary of Commerce, who delegated the authority to NOAA, who in turn delegated parts of this authority to the Office of Coastal Zone Management (OCZM). However, we refer to these agencies' actions as actions taken by NOAA.

2. The Mountain Rhythm Resources site, Project No. 4270–001, is on Boulder Creek. The

Watersong Resources site, Project No. 4312–001 is on Canyon Creek. The Mountain Water Resources site, Project No. 4282–001, is on Deadhorse Creek. Canyon Creek and Deadhorse Creek are tributaries of the North Fork Nooksack River. Boulder Creek is a tributary of the Nooksack River, joining it below the juncture of the north and south forks.

could issue licenses, because the projects were located in Washington's coastal zone. FERC told Mountain Rhythm Companies that it could not issue the licenses until (1) Mountain Rhythm Companies filed consistency certifications with the state Department of Ecology (DOE) showing that the projects were consistent with the state's coastal management plan; and (2) DOE concurred in the consistency certification or waived its right to object to them.

A week later, on August 31, 1992, Mountain Rhythm Companies filed their consistency certifications with DOE. These certifications were four pages each and in substance contended that because the projects were located so far from the coast, they would not affect the coast and should not be considered to be in the coastal zone.[3] The certifications indicated that

any further information or data could be found in FERC's files.[4]

On September 29 and October 1, 1992, DOE responded that it needed more information before it could begin to assess the consistency certifications. DOE told Mountain Rhythm Companies it still needed (1) an approved Shoreline Management Act permit from Whatcom County; (2) a brief assessment of the probable coastal zone effects of the proposal; and (3) a brief set of findings showing the projects' consistency with the WCZMP.[5] DOE contends that this letter gave timely notice of objection to consistency with the WCZMP absent an SMA permit.

Notwithstanding these state communications, Mountain Rhythm Companies still had not cured these asserted deficiencies five years later when, in September 1997, FERC completed its environmental impact

---

3. *See* Appendix to this opinion, containing full text of the Boulder Creek project's consistency certification, which is nearly identical to those of the other two projects.

4. Although it is not improper to expect cooperation between state and federal agencies, referring DOE to FERC's files was neither effective for Mountain Rhythm Companies nor particularly helpful to DOE. FERC's files would naturally include detailed data on all issues pertinent to federal licensing, whereas DOE's interests were limited to the coastal zone management issue.

5. Relevant portions of DOE's response to the Boulder Creek project's consistency certification, nearly identical to DOE's response to the two other certifications, and summarized in the text, provided:

Our preliminary evaluation of your certification indicates the following necessary data and information was not included:
1. An approved Shoreline Management Act permit. The data required by the state includes an approved shoreline permit from Whatcom County. The Shoreline Management Act (SMA), its implementing regulations, and the local Shoreline Master Programs are all federally approved en-

forceable policies of the CZMP. Any river, stream, or creek with a mean annual flow of 20 cubic feet per second (cfs) is considered a shoreline under the jurisdiction of the SMA. Information in our files indicates that Boulder Creek has a mean annual flow of 28 cfs, therefore it falls within the jurisdiction of the SMA. The contact for a shoreline application is: ... Whatcom County Public Works Department [address and telephone number given]. We encourage you to apply for a shoreline permit as soon as possible.
2. A brief assessment of the probable coastal zone effects of the proposal.
3. A brief set of findings showing the proposal is consistent with the Washington State Coastal Zone Management Program. Our experience is that the information in points 2 and 3 can best be developed during the Shoreline Management Act permit process. During this process, both the applicant and the affected agencies analyze probable coastal zone impacts. The local government and Ecology also determine whether the proposal is consistent with the program....
While we are accepting your certification for processing, the six month period will not begin until the necessary data and information is provided.

study on the hydropower projects. On September 30, 1997, FERC notified Devine that the Boulder Creek project still needed DOE's concurrence. In December 1997, Devine asked DOE what was needed, and DOE wrote back on March 13, 1998 that an SMA permit, among other things, was still lacking from the consistency certification. On March 23, 1998, FERC, too, told Devine that DOE needed an SMA permit from Whatcom County before reviewing the Boulder Creek certification.

On April 29, 1998, Devine filed with FERC a Motion for Declaratory Order on the Boulder Creek project, asking that FERC rule that the project was not in a coastal zone, that Ecology waived its chance to object, and that its consistency certification was complete.

On September 20, 1999, FERC denied the Motion for Declaratory Order. 88 FERC ¶ 61, 260.[6] Two days later, FERC asked Devine if he was still interested in pursuing the Boulder Creek project, and if so, to submit an SMA permit application to Whatcom County. Devine responded on October 25, 1999, that he was still pursuing the Boulder Creek license, but that he refused to apply for county SMA permits, maintaining that permits should not be required, that DOE had waived its chance to object to the certifications, and that applying for SMA permits would be futile because Whatcom County would reject them.

FERC dismissed the Boulder Creek license application on November 10, 1999. FERC then wrote to Devine about the two remaining project license applications. Devine replied that he would not seek SMA permits for those projects, either.

FERC dismissed the license applications for the Canyon Creek and Deadhorse Creek projects February 10, 2000. Mountain Rhythm Companies moved for rehearing of the three dismissals, and FERC denied rehearing. Mountain Rhythm Companies petitioned to this Court seeking review of the FERC orders dismissing the license applications.

## II.

We must decide this case within the traditional and statutory constraints that restrict judicial review of federal agency action. The Administrative Procedures Act (APA) sets forth the standards governing judicial review of findings of fact made by federal administrative agencies. *See Dickinson v. Zurko*, 527 U.S. 150, 152, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (citing 5 U.S.C. § 706). Pursuant to the APA, federal agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Rainsong Co. v. FERC*, 106 F.3d 269, 272 (9th Cir.1997) (citation omitted). Review of FERC's decisions are limited to this standard. *See City of Seattle v. FERC*, 923 F.2d 713, 715 (9th Cir.1991).

We must consider whether FERC violated this standard when it: (1) abided by Washington's NOAA-approved coastal zone map; (2) rejected petitioners' argument that they should not be required to apply for SMA permits because petitioners felt applying for them was futile; and (3) ruled that Washington had not forfeited its right to object to the hydropower projects.

■ On the first issue, Mountain Rhythm Companies argue that the State of

6. Mountain Rhythm Resources never moved for rehearing of FERC's denial of the declaratory order motion, precluding our review of it. But identical issues on this project were raised in a motion for rehearing of the dismissal of the license application. Our inabili-

ty to review the denial of the motion for declaratory order does not substantively affect the issues here; our review of the final FERC order is not a collateral attack on the interlocutory order denying declaratory relief.

Washington designated too broadly the areas that fall within its coastal zone. Mountain Rhythm Companies argue that the project sites are located so far from the coastline, some 45 miles as the fish swims up river, some 30 miles as the bald eagle flies (when it's flying straight), that they should not be considered within Washington's coastal zone. On this premise, Mountain Rhythm Companies contend that their FERC license applications should not be contingent at all on certification from the state about consistency with coastline management, for they urge the projects are not properly viewed as within the coastal zone.

The factual premise urged by Mountain Rhythm Companies, that their proposed projects would not affect the coast, might be correct or might be incorrect. On the one hand, one may intuitively question whether impacts on mountain creeks 45 miles from the sea significantly affect coastline. On the other hand, water runs downhill, carrying with it whatever silt or particles are dislodged by a project, and spawning fish must swim upstream. Only specialized expertise can tell us if there are real possible impacts if, for example, construction caused the soil to become less stable.[7]

It is not disputed that fifteen entire Washington counties touching the coast compose Washington's coastal zone. As a result, all of Whatcom County, the site of the three projects, is within the coastal zone previously designated by the state, and approved by NOAA, and thus subject to the restrictions in the WCZMP.

Mountain Rhythm Companies argue that despite the NOAA regulation allowing coastal zone boundaries to be defined by a political boundary such as that of a county,

Washington's inclusion of all of Whatcom County in the coastal zone violates the CZMA. The CZMA itself, the argument runs, expressly provides that the inland boundary of the coastal zone reach "only to the extent necessary to control shorelands." Mountain Rhythm Companies claim that Washington's coastal zone violates this statutory definition because it extends inland for dozens of miles all the way to the Cascades, including parts of Mount Rainier (elevation 14,410 feet), far exceeding a boundary drawn "only to the extent necessary to control shorelands."

■ But there is a fundamental problem with Mountain Rhythm Companies' contention. What Mountain Rhythm Companies object to, more precisely, is NOAA's approval of Washington's coastal zone that is urged to be too wide. But this matter originated in front of FERC. This objection raises issues of topography, water flow, and its effect, if any, on coastal environments, that are not generally within the mission and expertise of FERC. Expertise on those subjects rests primarily with NOAA. Regardless of the merits of Mountain Rhythm Companies' arguments, Mountain Rhythm Companies in our view cannot collaterally attack NOAA's decision in front of FERC. If Mountain Rhythm Companies find fault with a NOAA decision, it must challenge the decision in a forum where the agency or its representatives can directly respond. Mountain Rhythm Companies appeals a dismissal of their licenses from FERC, and that is all we review here.

Mountain Rhythm Companies' complaint about Washington's oversized coastal zone might have proceeded before the Secretary of Commerce. Had Mountain Rhythm Companies completed their consistency certifications, allowing the state to file an objection to the certifications,

---

7. In fact, the consistency certifications admit that the projects will cause increased sedi- ment, though urge this problem to be temporary.

Mountain Rhythm Companies could have asked the Secretary of Commerce to override the state's objections. Federal law would have allowed Mountain Rhythm Companies to argue that the projects were consistent with the objectives of the CZMA—the crux of the argument Mountain Rhythm Companies advance in this case. 16 U.S.C. § 1456(c)(3)(B)(iii). The Secretary of Commerce could have overridden the state's objection under the rationale that the projects do not affect the state's coastal zone, or based on other criteria that FERC would be unable to entertain. But Mountain Rhythm Companies never completed their consistency certifications, and the State of Washington never acted on them; there was no objection for the Secretary of Commerce to override. When Mountain Rhythm Companies refused to complete its certifications, preventing the state from taking any action on them, they did not pursue an opportunity to make the argument to the Secretary of Commerce that we are constrained to reject here.

FERC was not acting arbitrarily or capriciously when it relied on the NOAA-approved coastal zone map to require Washington coastal zone certification before issuing a license. FERC was *required* by federal statute to seek state certification before issuing a license, and it was within its proper jurisdiction to give credence to the NOAA determination the projects were located in the state's coastal zone. We uphold FERC's decision following the NOAA-approved designations and reject Mountain Rhythm Companies' claim that the project sites do not fall within the coastal zone. FERC properly could consider the sites in the coastal zone. On that premise, a consistency certification from the State of Washington was needed but not obtained by Mountain Rhythm Companies.

■ The second issue is raised by Mountain Rhythm Companies' contention that applying for SMA permits would have been futile. According to Mountain Rhythm Companies, Whatcom County regulations clearly prohibit hydropower projects at the proposed sites, which the county have designated as "Natural Shoreline" and "Trout Spawning Areas." Mountain Rhythm Companies argue that since their SMA permit applications would be rejected, they should not be required to produce the permits before the state begins to review their consistency certifications.

Mountain Rhythm Companies' contention that a permit would not be obtainable is of little relevance to evaluating a consistency certification. Absent an application for and denial of a permit, there is no way to know for certain that the licensing authority could not have given a variance. Equally or more importantly, the SMA permit application itself could contain valuable information alerting DOE to the projects' effects. The county's rejection of the SMA permit could also be helpful to DOE's analysis—if the county rejects the permit for reasons unrelated to the effects on the Puget Sound coastline, it is possible that DOE would still certify the project under the WCZMP. DOE in its discretion reasonably could conclude that the SMA permit application and the county's resolution of that application would contain enough facts, information, and findings about the projects and their impacts to assist DOE's consistency evaluation.

For similar reasons, we reject Mountain Rhythm Companies' argument that a permit is not "data" or "information" and could not be required by DOE to review the certifications. Even if a permit could not be "data" or "information," the *application* for the permit, as well as the decision granting or denying the permit, might contain such "data" and "information." [8]

8. It might be problematic if Mountain

Rhythm Companies submitted SMA permit

We next reach Mountain Rhythm Companies' contention that DOE waived the consistency requirement. Mountain Rhythm Companies argue that FERC did not need state approval because the state waived its right to object to the projects. Mountain Rhythm Companies filed their certifications in August 1992, and DOE still had not yet reviewed them by 2000. Though the state had to object within six months of a consistency declaration, the clock would only run after the applications were complete.

This is not a case where the State of Washington sat silently for six months after a consistency certification was filed. To the contrary, the state within a month of receiving the petitioners' declared consistency certifications explicitly told Mountain Rhythm Companies and FERC that it could not assess consistency without a SMA permit from Whatcom County for the projects, an assessment of coastal impact, and an analysis of consistency with the WCZMP.

Mountain Rhythm Companies argue that SMA permits were not necessary information and data required under the WCZMP for the certifications. Therefore, according to Mountain Rhythm Companies, the six-month clock began running when they filed the certifications in August 1992, and expired long ago, despite the DOE's explicit request for SMA permits, made within thirty days. The federal government, FERC, and DOE all respond that the WCZMP recognizes that an SMA permit is required before review of a con-sistency certification may begin, and the six-month clock has never started. And they urge that any ambiguity was resolved by the DOE's explicit request for a permit.

We acknowledge that nowhere in the then-applicable 278–page prose-form WCZMP was there a definitive statement that an SMA permit is necessary data and information required for a consistency certification. Asked to file briefs specifically on whether the WCZMP required an SMA permit, the federal government and DOE pointed to statements in the WCZMP, including that "[t]he heart of Washington State coastal zone management is the comprehensive control program instituted pursuant to the directives of the Shoreline Management Act of 1971." *Washington State Coastal Zone Management Program* 25 (1976). In contrast, the current version of the WCZMP states, under the heading "Necessary Data and Information," "An applicant for a federal permit or license must submit . . . [a]n approved shoreline permit, variance, or exemption." *Managing Washington's Coast: Washington's Coastal Zone Management Program* 116 (Therese Swanson et al. eds., 2001).

Even though the previous WCZMP was not as explicit as the current version, the phrase "comprehensive control program" suggests a permitting requirement. In addition, it seems beyond doubt that DOE gave fair notice to Mountain Rhythm Companies that it would not begin review of the consistency certifications absent SMA permits. Although the WCZMP is now

---

applications which were rejected, and DOE continued to refuse to review the certifications because there was no *approved* permit for the projects. If that happened, the state would never make a final determination one way or the other, and Mountain Rhythm Companies then might be concerned that it would not be able to appeal that determination to the Secretary of Commerce. But this is not the situation presented here. Mountain Rhythm Companies did not apply for the permits. It is speculative to think that DOE would unreasonably continue to withhold review of the certifications even though a permit application had been rejected. It is even more speculative to assume that the Secretary of Commerce would fail to recognize this fact and refuse to hear an appeal of the withholding of consistency certification.

explicit, we cannot say that it is an abuse of discretion for FERC to defer to the State of Washington's position that the permit requirement was previously implicit in the WCZMP's praise for the control program under the SMA. Nor can we say, in light of the language in the WCZMP and DOE's immediate response that SMA permits were needed, that FERC acted arbitrarily or capriciously, or abused its discretion, in upholding the position of the State of Washington that the applications for consistency certification were not complete without SMA permits,[9] and in deciding that DOE had not waived its chance to object to the projects.

■ Finally we reject Mountain Rhythm Companies' argument that the State of Washington cannot require an SMA permit as a condition for state consistency certification, because Mountain Rhythm Companies contend that the requirement for a county-issued permit strips the federal government of its exclusive grant of authority to issue licenses for hydropower projects. But the SMA permit is not a power permit; it is merely part of the consistency evaluation process invoked by the responsible state agency, DOE, in exercising its authority to assess consistency with state coastal zone management that Congress has granted to the states in the CZMA.

The statutory availability for petitioners or other applicants to seek an override of a state's negative determination on consistency by appeal to the federal authority of the Secretary of Commerce is significant.

As previously explained, Congress explicitly provided in the CZMA that federal licensing of power production would have to be consistent with coastal zone management constraints. 16 U.S.C. § 1456(c)(3)(A). Although the consistency determination is initially made by state agency, 16 U.S.C. § 1456(c)(3)(B), it can be overridden as a question of federal law in disputed cases by appeal of a state's objection to the Secretary of Commerce, who may override the state's objection to consistency by determining that the planned activity is "consistent with the objectives of [the CZMA] or is otherwise necessary in the interest of national security." 16 U.S.C. § 1456(c)(3)(A), (B)(iii).

An SMA permit on its own would not entitle the petitioners to operate their plants. And the lack of an SMA permit does not prevent a FERC applicant from receiving a license if the DOE would certify consistency after a permit had been rejected, or if the Secretary of Commerce would override a consistency decision by the state that denied consistency based on a denied permit. The SMA permit does not in any way supplant FERC's authority, but is a confirmation that a proposed project complies with state waterway zoning regulations. FERC remains the only authority that can issue power licenses. And with the deliberate concurrence of the Secretary of Commerce about consistency with the CZMA, FERC may do this even over state objection. There has been in this case no improper interference by state or local government with federal authority.

9. Even if SMA permits were not required information for consistency review to begin, petitioners' certifications were missing other necessary data and information.

Mountain Rhythm Companies' certifications were inadequate for DOE to begin to assess them. Much of the certifications Mountain Rhythm Companies gave to DOE in substance urged that state approval was not or should not be required. As for impacts, there were no maps or descriptions of the project sites, no facts or data to support the conclusion that the coastal waters would not be affected, and no details as to why the increased sediment from the projects, even if temporary, did not affect the coastal zone. It was not an abuse of discretion if FERC concluded that the consistency certifications were incomplete for reasons other than the SMA permits.

## III.

We deny the petitions to review the FERC orders.

**DENIED.**

## APPENDIX

CERTIFICATION OF CONSISTENCY

WITH COASTAL ZONE
MANAGEMENT
ACT

for the

BOULDER CREEK (FERC No 4270)

Run–of–River Small Hydroelectric
Project

located within Whatcom County,
Washington

August 31, 1992 .

**1. INTRODUCTION:** By letter dated August 24, 1992, the Federal Energy Regulatory Commission (FERC) requested that Mountain Rhythm Resources (MRR) provide the Washington State Department of Ecology (Ecology) and the FERC with certification that MRR's proposed Boulder Creek Project is consistent with the Coastal Zone Management Act. MRR was requested to provide the FERC with the certification and proof of receipt by Ecology prior to September 24, 1992.

This certification of consistency has been prepared in response to the FERC request.

**2. CERTIFICATION OF CONSISTEN-CY:** In accordance with the Coastal Zone Management Act of 1972 as amended (CZMA), an applicant for a federal license for a hydroelectric project is required to certify that it's [sic] proposed project is consistent with the appropriate coastal states [sic] approved Coastal Zone Management Program. The CZMA requires that an applicant: (a) provide the coastal state (WA State Department of Ecology in this case) with certification of consistency with the program together with supporting information, and (b) request that the state (Department of Ecology in this case) provide the applicant with a certification of consistency, or waives the requirement.

In accordance with the requirements of the CZMA, William L. Devine, agent for Mountain Rhythm Resources, hereby certifies that:

The proposed Boulder Creek hydroelectric project (as fully described within FERC regulatory docket number 4270) is consistent with the Coastal Zone Management Act of 1972, the State of Washington Coastal Management Program, and that the project will be carried out and conducted in a manner consistent with such program.

It is the applicant's opinion that the proposed Boulder Creek Project is consistent with the Coastal Zone Management Act and the state's Coastal Zone Management Program for the following reasons:

**(1). The project is consistent with the intent and requirements of the Federal Coastal Zone Management Act:** The project is not located within the coastal zone as defined by the Coastal Zone Management Act (CZMA). The CZMA defines the coastal zone as follows:

"coastal zone means ... the zone extends inland from the shorelands only to the extent necessary to control shorelands, the uses of which have a direct and significant impact on coastal waters."

The project is located in excess of 25 miles inland from Puget Sound and would not have any direct and significant impact on coastal waters. The project has been proposed to include terms and conditions to assure that adverse impacts do not occur to shorelands or coastal waters. Further, the project has been proposed to be constructed and operated in accordance with terms and conditions to assure that

water quality is maintained in accordance with federal and state laws.

This project was initiated in 1981 and an extensive regulatory docket exists regarding the project. This docket demonstrates that no individual or agency has ever demonstrated any significant impact from the project that could create a significant impact to coastal waters.

(2). **The project would not have any "direct and significant impact on coastal waters" as defined by federal or state law:** Under Washington State WAC 43.143.020, coastal waters are defined as follows:

"Coastal waters means the waters of the Pacific Ocean seaward from Cape Flattery south to Cape Disappointment, from mean high tide seaward two hundred miles."

Given the states [sic] definition of coastal waters, it would be inconceivable that the project could have any direct and significant impact on coastal waters.

A review of the Washington State RCW and WAC indicates that the state has not codified the project area to be within a defined coastal zone. Under WAC 43.143.020 Coastal Counties are defined as follows: "Coastal counties means Clallam, Jefferson, Grays Harbor, and Pacific Counties". Also, given the federal definition of the coastal zone in the CZMA, the topography between the project area and coastal waters, it does not seem logical or plausible that the state would extend the coastal zone to the project area.

(3). **The project has been proposed to include terms and conditions to assure that adverse impacts do not occur to shorelands or coastal waters.** As required by 15, CFS 930.58(4)[sic], the Applicant has reviewed the development effects of the project on the Coastal Zone Management Plan. This review is based on the actual or net effects expected after application of mitigation measures as required by the FERC, the State, and other federal agencies. Mitigation is defined by the Council of Environmental quality in 40 CFR 1508.20 as ".. avoiding impacts, minimizing impacts, rectifying impacts, reducing impacts over time, and copensating [sic] for impacts."

This project has been in the regulatory process since 1981, and an extensive regulatory docket now exists. This docket demonstrates that no individual or agency has demonstrated with technical evidence that this project would create or cause any significant adverse effects on the watershed and its resources.

The docket shows that the only net effect from the construction of the project will be temporary minor increases of sediment during limited time periods. The project has been proposed to be constructed in accordance with certain conditions to assure that water quality is maintained within the requirements of federal and state laws.

There will be no significant discernable net effects from the operation of the project.

(4). **The project is consistent with the intent and purpose of the state's Coastal Zone Management Program, and is not prohibited by such program.** This project was initiated in 1981. A review of the State Shorelines Management Act, and County Master Plan in effect at the time the project was filed indicates that the project is not inconsistent with the purpose and intent of the Shorelines Management Act or County Master Plan.

The State has recently indicated that an application for, and acquisition of a State Shorelines Substantial Development Permit will be required, however, certain regulatory conflicts may exist between federal

and state regulations regarding application for and issuance of a horelines [sic] permit prior to federal licensing which may render the regulatory process dysfunctional and inoperative. These regulatory conflicts may need to be resolved by state and federal government to assure that the regulatory process remains functional. This issue is discussed further in Section 4 below.

**(5) The project may have been previously waived from the CZMA certification requirement.** By letter dated November 15, 1984, William L. Devine requested that the Department of Ecology clarify the applicability of it shorelines program to this and other pending projects. The Department of Ecology did not respond to the initial inquiry or subsequent letters for confirmation.

**3. SUPPORTING DATA AND INFORMATION:** This project was initiated in 1981, and an extensive regulatory docket now exists regarding this project. Relevant information includes a State Water Rights Application and SEPA Checklist, a FERC License Application, numerous FERC Supplemental Information Reports, and extensive correspondence with numerous federal state and local agencies. The major items in the extensive FERC docket have been served upon Ecology thoughout [sic] this proceeding and provide Ecology with the necessary date and information to complete a consistency review in accordance with 15 CFS 930.58.

**4. REGULATORY CONFLICTS:** As noted above, the Dept. of Ecology has recently indicated that applicants for a non-federal hydropower license need to request and obtain State Shorelines Substantial Development Permit and perhaps other permits from the state and county prior to issuance of a federal license. A review of the State's Shorelines Management Act and case histories under the act indicate that the requirement that an applicant apply for and obtain a state and county permit prior to issuance of a federal license creates a number of conflicts between various state and federal laws and regulations including the CZMA and the Federal Power Act. Such conflicts have the potential to render the regulatory process dysfunctional and inoperative.

The potential regulatory conflicts that exist need to be examined and be resolved by state and federal government in order to assure that this and other non-federal hydropower projects are not unnecessarily and illegally eliminated as a result of a dysfunctional regulatory process.

**5. CONCLUSION:** It it [sic] is the Applicant's opinion that the proposed Boulder Creek project is consistent with the Coastal Zone Management Act of 1972 as amended and that it is consistent with the Washington State Coastal Management Program. In addition, it is the Applicant's intent to fully comply with the Coastal Zone Management Act and the applicable State Coastal Zone Management Program, and the project will be conducted in a manner that is consistent with such program.