**CITY OF FREMONT, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Pacific Gas And Electric Company, Respondent–Intervenor.**

**Northern California Power Agency, Petitioner,**

v.

**Federal Energy Regulatory Commission, Respondent,**

**Pacific Gas and Electric Company, Respondent–Intervenor.**

**Nos. 02–71477, 02–71573.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 2003.

Filed July 16, 2003.

---

Howard V. Golub, Nixon Peabody LLP, San Francisco, CA, and Frances M. Francis, Spiegel & McDiarmid, Washington, D.C., for the petitioners and amicus.

Larry D. Gasteiger, Federal Energy Regulatory Commission, Washington, DC, for the respondent.

William J. Madden, Jr., Winston & Strawn, Washington, DC, for the respondent-intervenor.

Before CANBY, JR., KLEINFELD, and RAWLINSON, Circuit Judges.

## OPINION

CANBY, Circuit Judge.

Pacific Gas and Electric Co. ("PG & E") operates a hydroelectric plant in California under a fifty-year license due to expire on September 30, 2003. After properly giving notice of its intention to apply for a new license, PG & E missed the application deadline of October 1, 2001, by one day because of a mail room error. The Federal Energy Regulatory Commission ("FERC") was generally merciful: it did not accept the late application for a regular new license proceeding, but waived its regulations to permit PG & E to compete, with an incumbent's preference, for a new license with any other competing applicants in a subsequent "orphan" license proceeding. The City of Fremont and the Northern California Power Agency ("NCPA") petition for review of FERC's decision, contending that PG & E should have been disqualified or, at the least, should not have been accorded an incumbent's preference. We deny the petition for review.

## I. FACTS AND PRIOR PROCEEDINGS

*PG & E's Untimely License Application*

Since 1953, PG & E has been licensed by FERC to operate the Poe Project, a hydroelectric project in Butte County, California. The license is set to expire on September 30, 2003. Under Federal Power er Act ("FPA") § 14, 16 U.S.C. § 807, the United States can move to acquire the project upon expiration of the original license. If the United States does not seek the project, as was the case here, any interested party can compete for a new license for the project. *See* FPA § 15, 16 U.S.C. § 808.

Section 15(b)(1) of the FPA required PG & E, as the existing licensee, to notify FERC whether it intended to file an application for a new license at least five years before the license expires. In 1998, PG & E timely filed notice of its intent to apply for a new license for the Poe Project. FERC issued public notice of PG & E's intent pursuant to 18 C.F.R. § 16.6(d).

Under § 15(c)(1) of the FPA, PG & E was required to apply for a new license by October 1, 2001, two years before the expiration of the 1953 license. Due to an apparent error in its mail room, PG & E missed this deadline by one day. No other license applications were filed within the statutory deadline. In an attempt to save its license, PG & E asked FERC to change retroactively the date that the initial license was issued, thereby rendering timely its otherwise late application. NCPA intervened in opposition to PG & E's proposed amendment.

*FERC's January Order*

In an order dated January 16, 2002, FERC refused PG & E's request, stating that such an action would defy the congressional intent behind the deadlines set

by the FPA. 98 FERC ¶ 61,032. FERC accordingly determined that the Poe Project was an "orphan," a status that results when a licensee files a notice of intent to file for relicensing but thereafter fails to file a timely application, and no other applicant files by the deadline. Ordinarily, under FERC regulations, an incumbent licensee is not permitted to compete for a license on an orphaned project. *See* 18 C.F.R. §§ 16.24–16.25. FERC's reasoning behind this disqualification is that, by filing a notice of intent to apply but then not applying, an incumbent may mislead potential applicants who elect not to apply in the expectation that the incumbent will. In the present case, however, FERC waived these regulations and permitted PG & E to participate in the subsequent orphan licensing proceedings because it found that PG & E had fully intended to apply and had not acted with any ulterior motive in failing to file a timely license application. FERC then determined that the license proceeding for the orphaned project was governed by the new-license procedures set forth in § 15 of the FPA; it accordingly granted PG & E incumbent preference under FPA § 15(a)(2). Section 15(a)(2) prohibits transferring a project from an incumbent to a new competitor if the new competitor's plans for the project are "insignificant[ly] differen[t]" from those of the incumbent.

After FERC issued its January order, Fremont intervened and sought rehearing along with NCPA. The rehearing was denied in an order of April 11, 2002, and a new deadline for notices of intent to apply for the license was set for three months thereafter. Fremont, NCPA, Butte County and PG & E each filed a timely notice of intent to apply for the license.

*Ninth Circuit Proceedings*

NCPA petitioned for review of the January FERC order. Fremont petitioned for review of FERC's April order denying rehearing. NCPA also appealed FERC's April order denying rehearing, and moved to intervene in Fremont's appeal. This court granted NCPA's and Fremont's joint motion to consolidate all three petitions. We granted PG & E's motion to intervene in all three petitions on behalf of FERC.

FERC moved to dismiss all three petitions for lack of jurisdiction on the ground that the orders in question were not "final" and so were not immediately reviewable. This court denied FERC's motion to dismiss without prejudice to FERC's renewing the jurisdictional arguments in its answering brief.

## II. DISCUSSION

The petitioners raise three arguments on appeal. First, they contend that FERC does not have the authority to permit PG & E to compete in the orphaned project proceedings, because § 15(c)(1) statutorily bars PG & E, as an untimely applicant, from competing for the license. Second, they argue that, even if FERC acted within its authority, it abused its discretion in waiving its regulations to allow PG & E to compete. Third, the petitioners argue that FERC acted unlawfully in granting incumbent status to PG & E in the orphaned project proceedings. We first resolve FERC's challenge to our jurisdiction, and then address the petitioners' arguments.

*Jurisdiction*

Under § 313(b) of the FPA, any person aggrieved by an order of FERC may obtain review in the court of appeals. *See* 16 U.S.C. § 8251 (b). This court has interpreted § 313(b) to permit our exercise of jurisdiction if (1) the order is final; (2) the order, if unreviewed, would inflict irreparable harm on the party seeking review; and (3) judicial review at this stage of the

process would not invade the province reserved to the discretion of the agency. *See The Steamboaters v. FERC,* 759 F.2d 1382, 1387–88 (9th Cir.1985). Under this three-part test, we have jurisdiction to review FERC's decision.

An agency order is final when it "imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process." *Papago Tribal Util. Auth. v. FERC,* 628 F.2d 235, 239 (D.C.Cir.1980) (internal quotation and citation omitted). FERC's challenged orders determine who can apply for the license, and the terms on which those applications will be considered. FERC's decision to grant PG & E incumbent preference affects the legal positioning of the parties competing for the license. Because the FERC orders attach legal consequences to the future Poe Project proceedings, they satisfy the finality prong of our analysis. *See id.* (holding that an order "which attach[es] legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control" is reviewable) (citing *Columbia Broad. Sys., Inc. v. United States,* 316 U.S. 407, 425, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942)).

The second requirement is also met: if FERC's orders were not reviewed, the petitioners would likely suffer irreparable harm. Although it is true, as FERC contends, that the petitioners might be awarded the license under the rules established by FERC in its January order, the rules, if faulty, prejudice the petitioners in some ways unlikely to be undone. The practical consequence of the order is that the petitioners must engage in the uphill task of competing for the license against an incumbent PG & E, whose application will be treated as a benchmark. *See id.* at 239 ("The reviewability of an order must …

be determined by reference to its practical function and consequences"). Indeed, it is entirely conceivable that the presence of PG & E with an incumbent preference will forestall one or both petitioners from investing the large sums necessary to prepare competing applications, thus losing the opportunity for any further judicial review.

Finally, judicial review at this stage does not impinge on FERC's discretion. While this court does not have jurisdiction to review agency orders where such review would necessarily infringe on the statutory role of the agency, *see id.* at 242, this case involves significant issues of statutory interpretation that are not the exclusive province of the administrative agency. *See The Steamboaters,* 759 F.2d at 1388. We therefore reject FERC's contention that the petition must be dismissed for lack of jurisdiction.

### Standard of Review

We review decisions by FERC to determine whether the agency action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See* Administrative Procedures Act, 5 U.S.C. § 706(2); *Rainsong Co. v. FERC,* 106 F.3d 269, 272 (9th Cir.1997). We review de novo the question whether FERC complied with its statutory mandate. *See American Rivers v. FERC,* 201 F.3d 1186, 1194 (9th Cir.2000).

### The FPA Did Not Require Disqualification of PG & E

The petitioners contend that FPA § 15(c)(1) required PG & E to file a timely application in order to compete for a new license, and that FERC therefore exceeded its authority in allowing PG & E to compete for the orphaned project despite its untimely application. This contention,

however, fails to take into account the nature of an orphan proceeding and the FPA's failure to anticipate it.

Section 15 governs "new" licensing procedures when the United States does not exercise its right to take over an expired license. Under § 15(a)(1), FERC is permitted to issue a new license to the existing licensee or a new licensee. Section 15(b) requires the incumbent licensee to provide notice of its intent to renew. Section 15(c)(1) states that each application for a new license pursuant to § 15 "shall be filed with the Commission at least 24 months before the expiration of the term of the existing license." Section 15 does not, however, instruct FERC how to proceed in the event that *no one* applies within the statutory deadline. As the District of Columbia Circuit has pointed out, § 15 "appears to assume ... that incumbent licensees that file notices of intent to apply for relicensing will ultimately do so.... The statute is simply silent" as to how FERC should proceed when the project is orphaned. *Oconto Falls v. FERC,* 41 F.3d 671, 677 (D.C.Cir.1994).

In 1989, FERC exercised its authority to fill gaps left by Congress and promulgated regulations, 18 C.F.R. §§ 16.24–16.25, to address orphaned projects. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (" 'The power of an administrative agency to administer a congressionally-created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' ") (quoting *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)); *Oconto Falls,* 41 F.3d at 677 (recognizing FERC's authority to determine how orphan proceedings should be handled in light of the gap left by Con-

gress). Sections 16.24–16.25 provide that, if an existing licensee files a notice of intent to file a new license application but fails to file a timely application, and no other applicants file timely applications, the project is considered orphaned and FERC will issue a notice inviting new license applications from potential applicants other than the existing licensee. *See* 18 C.F.R. §§ 16.24(a)(2), 16.25(a).

The petitioners have no quarrel with these regulations as written. They argue, however, that in waiving the disqualification of the incumbent specified by these regulations, FERC violated the statutory application deadline contained in § 15(c)(1) of the FPA. The petitioners point out that "shall," as it appears in § 15(c)(1), is a term of mandate. They also note that Congress expressly included provisions for waiver of § 15(c)(1) in certain transitional situations not applicable here. *See Export Group v. Reef Indust., Inc.,* 54 F.3d 1466, 1474 (9th Cir.1995) (stating that where Congress has enumerated exemptions in one section of a statute, it is presumed that it did not leave other exemptions in other sections of the same statute to judicial identification). Finally, they resort to legislative history, quoting a House Report that states:

> The Committee, in recognition of the applications pending or about to be filed, has provided FERC authority for reasonable adjustments of these filing deadlines consistent with the objectives of these deadlines. Failure to meet the deadlines must prejudice the affected entity. FERC has no authority in the bill to waive the deadlines or to find reasons for granting exceptions, grace periods, or otherwise recognizing excuses.

H.R.Rep. No. 99–507, at 36 (1986) *reprint-*

ed in 1986 U.S.C.C.A.N. 2496, 2523.[1] This passage and the other points urged by the petitioners, however, illustrate only that Congress intended § 15(c)(1) to be strictly enforced in ordinary new licensing proceedings. · As FERC points out, it *did* enforce the deadline against PG & E when it refused to accept PG & E's late application for purposes of a regular new license proceeding (in which PG & E would have been the only applicant) and declared the project orphaned.

Indeed, the petitioners' argument about the meaning of § 15(c)(1) proves too much. Section 15(c)(1) applies to *"each* application for a new license," not just the applications of incumbent licensees. 16 U.S.C. § 808(c)(1) (emphasis added). NPCA and Fremont were just as subject as PG & E to this provision of § 15(c)(1). If missing the deadline requires disqualification from a subsequent orphan proceeding, then NPCA and. Fremont, as well as PG & E, are disqualified. The arguments of the petitioners fail to take into account the fact that orphan proceedings *depend* on the failure of all parties to meet the § 15(c)(1) statutory deadline. Interpreting § 15(c)(1) to bar subsequent applications by parties who failed to meet its deadline would render orphan proceedings obsolete. Nothing in the FPA or its history requires that result and, if there were any doubt, we would defer to FERC's interpretation of the statute's mandate. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.

We reject the petitioners' argument that FERC's waiver in this case renders the deadline of § 15(c)(1) nugatory because an incumbent who fails to apply on time will simply be able to apply later in an orphan proceeding. Ample incentive remains for an incumbent to meet the deadline of § 15(c)(1), and there is no lack of penalty for failure to do so. An incumbent who fails to file by the deadline of § 15(c)(1) may find that another applicant has filed an application, which will prevent the project from being orphaned and will result in new license proceedings from which the incumbent will be excluded. Even without that prospect, there is reason to meet the deadline. Here, PG & E's failure has precluded it from a new license proceeding in which it would have been the only applicant, and replaced it with an orphan proceeding of less certain outcome.[2] In sum, FERC's waiver in this case did not nullify the effectiveness of § 15(c)(1).

We conclude, therefore, that the FPA did not preclude FERC from waiving its regulations to permit PG & E to compete in the orphan proceeding. The next question is whether that waiver, or FERC's recognition of an incumbent preference for PG & E, was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2).

*FERC Did Not Abuse its Discretion*

*FERC Can Waive Its Own Regulations*

■■ In its January order, FERC concluded that, while § 15(c)(1) prohibited FERC from accepting PG & E's untimely relicense application, the only provisions which prevented PG & E from competing for the resulting orphaned project were

---

**1.** PG & E reads the excerpt as pertaining only to FERC adjustments of the deadlines for transitional applicants pursuant to § 15(c)(2). This interpretation is made slightly problematic, however, by the fact that FERC cited this legislative· history in its January order as evidence that § 15(c)(1) required it to reject PG & E's relicense application as untimely.

**2.** Moreover, as we discuss in the next section of the opinion, an incumbent who misses the deadline and seeks to compete in orphan proceedings must satisfy FERC that it did not intend to mislead other potential applicants, and that good cause exists for a waiver of FERC's regulations disqualifying the incumbent.

FERC's own regulations, §§ 16.24(a)(2), 16.25(a), which could be waived.[3] This determination was not error. As a general principle, "it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970) (internal quotation marks omitted). The regulations waived in this case fall within this rule.

### The Waiver in This Case Was Not an Abuse of Discretion

Whether FERC soundly exercised its discretion in waiving its orphaned project regulations to allow PG & E to compete for a new license for its own project "depend[s] on the circumstances of the case as reviewed by the Commission." *Neighborhood TV Co., Inc. v. FCC*, 742 F.2d 629, 636 (D.C.Cir.1984) (emphasis omitted) (quoting *Municipal Elec. Util. Ass'n v. FPC*, 485 F.2d 967, 973 (D.C.Cir.1973)). FERC's conclusion that there was good cause to waive the incumbent bar was well supported by the circumstances. FERC pointed out that the reason the regulations excluded incumbent licensees from competing for orphaned projects was that their failure to apply after stating an intent to apply tended to mislead other potential applicants. *See Hydroelectric Relicensing Regulations Under the Federal Power Act*, 54 Fed.Reg. 23,756, 23,804 (June 2, 1989).

FERC concluded that PG & E had not acted with the intent to mislead, but instead had prepared a license application in good faith and attempted to file it on time. PG & E spent over three million dollars assembling a four-volume application. Over several years, PG & E conducted twenty-one different resource studies and met with resource agencies, Indian tribes and the public approximately twenty times. FERC noted that barring PG & E from competing for the Poe Project would be a severe punishment for the crime of inadvertently filing one day late. FERC recognized that preventing PG & E from competing would provide the petitioners with a chance to compete without facing the incumbent preference, even though the incumbent had done nothing prejudicial to those potential applicants. If the regulations were enforced against PG & E, a new applicant would be able to purchase a 50–year license on the Poe Project for possibly less money than it would earn from that project in one year.[4]

In addition, relaxation of a procedural rule by an agency in a particular case is not subject to judicial interference in the absence of a showing of injury or substantial prejudice. *See Sun Oil v. FPC*, 256 F.2d 233, 239 (5th Cir.1958) (citing *NLRB v. Monsanto Chem. Co.*, 205 F.2d 763, 764 (8th Cir.1953)). Neither petitioner has demonstrated injury or substantial prejudice from FERC's waiver of its regulations. It is true that, if FERC enforced its regulations and excluded PG & E from competing for the orphaned Poe

**3.** Section 16.24(a)(2) states that an incumbent licensee who fails to file before the § 15(c)(1) deadline may not file an application for the orphaned project. *See* 18 C.F.R. § 16.24(a)(2). Section 16.25(a) likewise provides that when a project is orphaned, FERC will accept applications from potential applicants other than the existing licensee. *See* 18 C.F.R. § 16.25(a).

**4.** Under §§ 14 and 15 of the FPA, 16 U.S.C. §§ 807–808, when a new license for a project is issued to an entity other than the existing licensee, the new licensee is required to pay the existing licensee only its net investment in the project plus reasonable severance damages, regardless of the fair market value of the project.

Project, the petitioners would be in a position to profit from PG & E's misfortune. The lack of opportunity to realize a fortuitous profit, however, is a far cry from a genuine injury. Neither petitioner expressed any interest in applying for the Poe Project license until PG & E made its miscue. They were content to let PG & E apply for a new license without opposition. Because PG & E missed its deadline, the petitioners can now compete with PG & E for the orphaned project if they wish. The petitioners have not shown prejudice to a degree that would preclude FERC's discretionary waiver of its regulations.

We reject the petitioners' contention that FERC's decision to grant a waiver in this case was arbitrary because it was at odds with its refusal to grant waivers in other cases. We do not dispute that FERC has at times rejected untimely filings. *See, e.g. Marseilles Hydro Power LLC,* 99 FERC ¶ 61,011 (2002) (denying applicants' request to waive the 18 C.F.R. § 4.36(a) deadline for filing of notice of intent to file competing application); *Milton and Morris Zack,* 21 FERC ¶ 61,123 (1982) (rejecting a notice of intent to file a competing application because it was filed two days after the statutory deadline set by 18 C.F.R. § 4.33(a)(1) (1982)). But in the present case as well, FERC enforced the deadline for new licenses and threw PG & E into orphan proceedings. Moreover, FERC has waived §§ 16.24–16.25 in several cases. *See, e.g., PG & E and El Dorado Irrigation Dist.,* 87 FERC ¶ 61,-022 (1999) (waiving § 16.24(a) in order to permit a transferee who acquired the project from an incumbent transferor to compete in orphan project proceedings despite the incumbent transferor's failure to file a relicensing application);[5] *Skorupski,* 79 FERC ¶ 61,339 (1997) (waiving § 16.25 to permit an applicant in an orphaned proceeding to cure defects in his application); *Wisconsin Elec. Power Co.,* 73 FERC ¶ 61,208 (1995) (waiving § 16.25(b)(1) to permit an interested party to apply for an orphaned project despite the party's untimely application). The petitioners have failed to establish that FERC's January order arbitrarily deviated from a clearly-established practice of refusing waiver requests. FERC has no such practice, and its decision in this case was reasonably in line with earlier waiver decisions by the agency, all of which were necessarily exercises of discretion in light of the facts and equities in the particular cases.

## FERC Acted Lawfully in Conferring Incumbent Status on PG & E

█ In its January order, FERC noted that under one of its earlier rulings, affirmed in *Oconto Falls,* 41 F.3d at 677, an orphan proceeding is governed by the procedures set forth in § 15 of the FPA. FERC therefore reasoned that the incumbent preference contained in § 15(a)(2)[6] would apply to the licensing competition for the Poe Project. The petitioners contend that FERC abused its discretion or

---

5. In *PG & E and El Dorado Irrigation District,* 87 FERC 61,022 (1999) PG & E declined to grant incumbent status to the transferee, because the transferee offered to waive any competitive advantage it might obtain as a result of the transfer.

6. Section 15(a)(2) of the FPA states: "Any new license issued under [§ 15, which permits FERC, upon expiration of a license not taken over by the federal government, to issue a new license to the existing licensee or a new licensee] shall be issued to the applicant having the final proposal which the Commission determines is best adapted to serve the public interest, except that in making this determination the Commission shall ensure that insignificant differences ... between competing applications are not determinative and shall not result in the transfer of a project." 16 U.S.C. § 808(a)(2).

acted contrary to law in applying the incumbent preference in this case. We reject this contention.

Insofar as FERC's decision to apply the incumbent preference constitutes an interpretation of § 15 of the FPA, we review it under a *Chevron* analysis. *See Oconto Falls*, 41 F.3d at 674. We begin with the text of the statute. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778; *American Rivers*, 201 F.3d at 1196. As we pointed out earlier, § 15 is "simply silent on the issue of how orphaned proceedings should be handled." *Oconto Falls*, 41 F.3d at 677. The petitioners contend, however, that the language of § 15(a)(2) precludes its application in orphan proceedings, because the incumbent preference described in § 15(a)(2) is limited to a "new license issued *under this section.*" (emphasis added). Because applications for orphaned projects are distinct from applications for a new license, the petitioners argue, they cannot be governed by § 15.[7] But the words "under this section" merely specify the proceedings to which § 15 *must* apply. Because Congress did not envision orphan proceedings, the text of § 15 cannot be read fairly as prohibiting FERC from applying § 15 procedures to orphan proceedings.

The petitioners argue that FERC's interpretation divorces the obligation to file within the statutory deadline set forth in § 15(c)(1) from the incumbent preference benefit set forth in § 15(a)(2), thereby violating the established principle that statutes must be construed as a whole so as to give meaning and purpose to each part. We side with the District of Columbia Circuit, however, in rejecting the argument that, because applications for orphan proceedings are, by definition, filed after the § 15(c)(1) deadline, § 15 procedures cannot be applied to orphan proceedings. *See* 41 F.3d at 676–77. As our sister circuit stated, "the relicensing provisions of Section 15 govern orphaned project proceedings, notwithstanding its twenty-four month requirement because that requirement is neither a component of the definition of a relicensing proceeding nor a prerequisite to the application of Section 15 to the licensing of orphaned projects." *Id.* at 676.

The statutory incumbent preference suggests a legislative intent to prevent the transfer of projects to new owners on the basis of minor differences in the merits of competing applications. *See Chevron*, 467 U.S. at 851, 104 S.Ct. 2778; *American Rivers*, 201 F.3d at 1196. Section 15(a)(2) was adopted at least in part to ensure that a license would not be transferred unless the new applicant would perform significantly better than the incumbent. *See Kamargo Corp. v. FERC*, 852 F.2d 1392, 1394 (D.C.Cir.1988); *see also* 132 CONG. REC. H8953 (daily ed. Oct. 2, 1986) (statement of Rep. Shelby) ("[the] public should not suffer the disruptions and economic dislocations that would be associated with a license transfer unless a good reason in the public interest has been shown"). FERC's application of the incumbent preference to the orphan proceeding in the circumstances of this case dovetails with this congressional intent.

FERC's ruling is not inconsistent with its decision in *N.E.W. Hydro, Inc.*, 85 FERC ¶ 61,222 (1998). Although FERC

---

7. As support for this assertion, Fremont cites to language in *Oconto Falls, WI. v. FERC*, 204 F.3d 1154, 1162 (D.C.Cir.2000) ("Oconto II"), in which the court stated that an orphan proceeding "is not a new license proceeding under [that] section." Fremont misstates the case, however. The court actually recognized that even though orphan proceedings were not new license proceedings, FERC could apply § 15 procedures to orphan proceedings. *See id.*

stated in *N.E.W. Hydro* that "in proceedings involving equally suitable competing applications to relicense an orphaned project, neither municipal preference nor incumbent licensee tie-breaker preference pertains," it did so in the context of an orphan proceeding involving two non-incumbent applicants. *See* 85 FERC ¶ 61,-222. The quoted language is properly construed as dicta, which was uttered in the context of justifying application of a first-to-file tie-breaker in "the first competitive relicense case *without* an incumbent applicant." *Id.* (emphasis added.)

We conclude, therefore, that FERC's ruling that § 15, and its incumbent preference of § 15(a)(2), applied to the Poe Project orphan proceedings was in accord with the congressional intent expressed in the FPA. Even if the legislative intent behind § 15(a)(2) did not provide guidance in reviewing FERC's interpretation, we would still defer to FERC's decision on the ground that it is a reasonable interpretation of the statute. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778.

### III.  CONCLUSION

The decisions of FERC to waive its regulations to permit PG & E to compete for a license in the orphaned Poe Project proceedings, and to apply the incumbent preference of § 15(a)(2) of the FPA, were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," nor were they "in excess of statutory jurisdiction."  5 U.S.C. § 706(2)(A),(C). The petition for review is

**DENIED.**